SEABOARD AIR LINE RAILWAY *v.* KENNEY, ADMINISTRATOR OF CAPEHART, ALIAS EASON.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 269. Argued March 10, 1916.—Decided April 3, 1916.

The Federal Employers' Liability Act, in so far as it deals with the subjects to which it relates, is paramount and exclusive, and recovery under it can be had only in the mode prescribed, and by and for the persons in whose favor it creates and bestows a right of action.

The Federal Employers' Liability Act contains no definition of who are to constitute the next of kin to whom it grants a right of recovery, and the absence of such definition indicates the purpose of Congress to leave the determination of that question to the state law.

There is no merit in the contention that Congress intended that the term "next of kin" was used in the Employers' Liability Act in its common-law significance and as excluding all persons not included in that term under the common law.      :

The ruling of the state court in this case that the next of kin of an intestate, who was illegitimate, were his half brothers and sisters legitimately born of the same mother, excludes by implication the possibility of an asserted father being the parent and person entitled to recover under the Employers' Liability Act.

167 Nor. Car. 14, affirmed.

THE facts, which involve the construction and application of the Employers' Liability Acts of 1908 and 1910, and the determination of who are the next of kin entitled to maintain an action thereunder, are stated in the opinion.

*Mr. Murray Allen* for plaintiff in error:

The alleged beneficiaries, Sills Hardy, Joe Hardy and Nettie Hardy, who are legitimate children of the mother of the deceased employee, who was an illegitimate child, are not the next of kin of such employee within the provisions of § 1 of the Federal Employers' Liability Act.

The surviving father of a deceased employee, who was an illegitimate child, is the parent of such employee within the provisions of said section of the Act.

If the alleged beneficiaries, Sills Hardy, Joe Hardy and Nettie Hardy, are next of kin of the deceased employee, they were not dependent upon such employee, as required by said section.

Allegation and proof of the existence of beneficiaries, as defined by the Federal Employers' Liability Act, are essential to a right to recover damages for the death of an employee.

The expression, "next of kin," as used in the Act, is to be construed in the light of the common law.

At common law the words "parent," "child," "next of kin," and words of similar import, were held to relate only to those who are legitimate.

In construing the expression, "next of kin," as used in the Employers' Liability Act, the application of the principle that words of kindred when used in a statute, relate only to those who are legitimate, is not affected by state legislation regulating the distribution of personal property.

Uniformity in the application of the Employers' Liability Act will be entirely destroyed if the expression "next of kin" is to be defined in accordance with the legislation and judicial decisions of the various States.

If the surviving father of a deceased employee, who was an illegitimate child, is the parent of such employee within the provisions of § 1 of the act, plaintiff is not entitled to recover in this action, because the father of his intestate is living.

Numerous authorities both state and federal are cited in support of these contentions.

*Mr. Francis D. Winston,* with whom *Mr. J. H. Matthews* was on the brief, for defendant in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The trial court on the verdict of a jury entered judgment against the plaintiff in error for the sum of $800 for the negligent killing of Capehart who was one of its employees, and this writ of error is prosecuted to reverse the action of the court below affirming such judgment. (167 Nor. Car. 14.) At the time of his death Capehart was a minor and was employed by the defendant company as a switchman. The accident occurred in North Carolina on an interstate freight train moving from a point in North Carolina to one in Virginia. The suit to recover was specifically based on the Employers' Liability Act of April 22, 1908, 35 Stat. 65, c. 149, as amended April 5, 1910, 36 Stat. 291, c. 143, and as both parties concede that that act was applicable, that subject may be put out of view.

The deceased was a natural or illegitimate child born in
North Carolina, and the next of kin for whose benefit the
administrator sued, he having been qualified at the alleged
domicile of the deceased in North Carolina, were three
minor children of the deceased's mother, the issue of a
marriage by her contracted after his birth, she the mother
being dead at the time of the accident.  There was no
question in the court below as to non-liability because of
an absence of negligence, since as pointed out by the court
the sole contention pressed upon it for reversal was that
the damages for the death had been awarded to persons
who were not entitled to the recovery as next of kin under
the act of Congress, even although they were the next of
kin by the law of the State.  Thus the court said: "The
sole contention of the defendant requiring our considera-
tion, is that the expression 'next of kin,' as used in § 1 of
this act [the act of Congress] is to be construed by the
common law, disregarding the state law defining those
words."  After then quoting from the state statute on the
subject, the court further said: "It is very clear that in
North Carolina the two half brothers and the sister of the
intestate are his next of kin.  It seems to us immaterial
whether it were formerly otherwise in this State, either by
statute or the common law before any statute.  The ques-
tion is, who was the 'next of kin' at the time of such death
in the State where the wrongful death occurred?"  Pro-
ceeding to examine and decide this question, it was held
that next of kin for the purpose of the recovery under the
act of Congress were the next of kin as established by the
law of the State where the right to recover obtained.  And
it is the correctness of this ruling which we are alone called
upon to consider, since despite the great number of assign-
ments of error which are made, they all in last analysis
depend upon that question.  We need not stop to review
the assignments to demonstrate this fact, since in argu-
ment they are all stated as embracing the solution of three

inquiries, which as we shall see, when we consider them, will be virtually disposed of by deciding the single question concerning the correctness of the ruling of the court below as to the next of kin under the statute. The three questions thus stated are in substance as follows: First, whether the minor children who under the law of North Carolina were the next of kin of their natural or illegitimate brother because of their common motherhood were the next of kin under the act of Congress? Second, if in the absence of a parent they were so, would the proof of the existence of an asserted father of the deceased make such person his parent within the act of Congress, excluding the right of the next of kin to recover the damages? Third, if the minor brothers and sister were next of kin under the act of Congress, had they such dependency on the deceased as gave them any right to recover under the act?

We consider the questions separately.

1. There can be now no question that the act of Congress in so far as it deals with the subjects to which it relates is paramount and exclusive. It is therefore not disputable that recovery under the act can be had alone in the mode and by and for the persons or class of persons in whose favor the law creates and bestows a right of action. *Second Employers' Liability Cases*, 223 U. S. 1; *Mich. Cent. R. R.* v. *Vreeland*, 227 U. S. 59; *Taylor* v. *Taylor*, 232 U. S. 363; *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 501. But this is irrelevant, since the controversy concerns only the meaning of the act which it is conceded, when rightly interpreted, is entitled to exclusive operation.

Plainly the statute contains no definition of who are to constitute the next of kin to whom a right of recovery is granted. But as, speaking generally, under our dual system of government who are next of kin is determined by the legislation of the various States to whose authority that subject is normally committed, it would seem to be clear that the absence of a definition in the act of Congress

plainly indicates the purpose of Congress to leave the determination of that question to the state law. But it is urged as next of kin was a term well known at common law, it is to be presumed that the words were used as having their common law significance and therefore as excluding all persons not included in the term under the common law, meaning of course the law of England as it existed at the time of the separation from the mother country. Leaving aside the misapplication of the rule of construction relied upon, it is obvious that the contention amounts to saying that Congress by the mere statement of a class, that is, next of kin, without defining whom the class embraces, must be assumed to have overthrown the local law of the States and substituted another law for it, when conceding that there was power in Congress to do so, it is clear that no such extreme result could possibly be attributed to the act of Congress without express and unambiguous provisions rendering such conclusion necessary. The truth of this view will be made at once additionally apparent by considering the far-reaching consequence of the proposition since if it be well founded, it would apply equally to the other requirements of the statute—to the provisions as to the surviving widow, the husband and children, and to parents, thus for the purposes of the enforcement of the act overthrowing the legislation of the States on subjects of the most intimate domestic character and substituting for it the common law as stereotyped at the time of the separation. The argument that such result must have been intended since it is to be assumed that Congress contemplated uniformity, that is, that the next of kin entitled to take under the statute should be uniformly applied in all the States, after all comes to saying that it must be assumed that Congress intended to create a uniformity on one subject by producing discord and want of uniformity as to many others.

But we need go no further since the want of merit in the

contention is fully demonstrated by authority. In *Hutch-inson Investment Co.* v. *Caldwell*, 152 U. S. 65, the matter under consideration was § 2269, Rev. Stat., giving to the heirs of a deceased preëmptor who had died before completing his entry the right to perfect the same, the statute providing, "But the entry in such cases shall be made in favor of the heirs of the deceased preëmptor and a patent thereon shall cause the title to inure to such heirs as if their names had been specially mentioned." The controversy was whether the word heirs under the statute should be taken in its common law meaning and therefore not to give a right to complete the entry to illegitimate children who had been recognized by their father, the preëmptor, and who were his heirs under the law of the State of Kansas where the land was situated and where the deceased preëmptor was domiciled. The court said: "We are unable to concur with counsel for plaintiffs in error that the intention should be ascribed to Congress of limiting the words 'heirs of the deceased preëmptor' as used in the section, to persons who would be heirs at common law (children not born in lawful matrimony being therefore excluded) rather than those who might be such according to the *lex rei sitæ*, by which, generally speaking, the question of the descent and heirship of real estate is exclusively governed. If such had been the intention, it seems clear that a definition of the word 'heirs' would have been given, so as to withdraw patents issued under this section from the operation of the settled rule upon the subject. . . . But it is contended that the word 'heirs' was used in its common law sense, and it is true that technical legal terms are usually taken, in the absence of a countervailing intent, in their established common law signification, but that consideration has no controlling weight in the construction of this statute. Undoubtedly the word 'heirs' was used as meaning, as at common law, those capable of inheriting, but it does not follow that the question as

to who possessed that capability was thereby designed to be determined otherwise than by the law of the State which was both the situs of the land and the domicile of the owner" (pp. 68, 69). And there is no ground for taking this case out of the rule thus announced upon the theory that the controversy involved the title to real estate, contracts concerning which are governed by the law of the situs, since we are dealing here with the subject of next of kin which so far as legislative power is concerned under our constitutional system of government is inherently local and to be determined by the rules of the local law. And this is well illustrated by *Blagge* v. *Balch*, 162 U. S. 439, which involved a controversy as to the distribution of French spoliation claims awarded under an act of Congress providing "That in all cases where the original sufferers were adjudicated bankrupts the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy . . ." Without going into detail concerning the controversy in that case it suffices to say that if the next of kin entitled to take under the act of Congress had been ascertained under the rule of the common law, there would have been one result, and if determined by the law of the State controlling distributions, another and different result followed. Coming to determine the significance of the words "next of kin" from the act itself and its context, the court said (p. 464); "And we are of opinion that Congress, in order to reach the next of kin of the original sufferers, capable of taking at the time of distribution, on principles universally accepted as most just and equitable, intended next of kin according to the statutes of distribution of the respective States of the domicile of the original sufferers."

2 and 3. The suggestion rather than contention that if the state law be held applicable to determine next of kin, the right should have been recognized to seek to trace the paternity of the illegitimate child so as to make the

asserted father the parent under the statute, might well be disposed of by saying that no such contention seems to have been urged in either of the courts below. But aside from this, the entire want of merit of the proposition is at once demonstrable from a two-fold point of view: (a) because it was necessarily foreclosed by the ruling of the court below as to the state law concerning the next of kin and the right of the brothers and sister of the illegitimate child to inherit from him solely because of a common motherhood, a ruling which excluded by necessary implication the right now contended for. (b) Because as no provision, either of the state law or of the common law, supporting the asserted right is referred to, the suggestion may be taken as simply a typical illustration of the confusion of thought involved in the main proposition relied upon which we have previously adversely disposed of.

In so far as it is suggested that there was no proof tending to show a dependent relation between the next of kin who were recognized and the deceased so as to justify recovery under the statute, it suffices to say that it was expressly foreclosed by the finding of the jury sanctioned by the trial court and was not questioned in the court below, and at all events involves but a controversy as to the tendencies of all the proof foreclosed by the action of both courts which we would not reverse without a clear conviction of error, which after an examination of the record on the subject we do not entertain. *Great Northern Ry.* v. *Knapp,* 240 U. S. 464.

*Affirmed.*