**KEYWAY STEVEDORING CO. v. CLARK, Deputy Com'r, et al.**

No. 1760.

District Court, D. Maryland.

Sept. 25, 1930.

Janney, Ober, Slingluff & Williams, of Baltimore, Md., for complainant.

William C. Purnell, Asst. U. S. Atty., of Baltimore, Md., for the Commissioner.

William W. Powell, of Baltimore, Md., for respondent Cora Dixon.

WILLIAM C. COLEMAN, District Judge.

This is a proceeding brought under section 21 of the Longshoremen's and Harbor Workers' Compensation Act, 33 USCA § 921, asking for a review of an award made by the local deputy commissioner, appointed pursuant to the provisions of that act.

On May 28, 1930, one Edward Dixon, colored, was drowned in Baltimore Harbor while engaged in stevedoring for the complainant company. Cora Dixon filed a claim with the deputy commissioner for compensation under the act on behalf of herself, as the common-law wife of the deceased, and on behalf of three children, the acknowledged illegitimate offspring of herself and the deceased. The deputy commissioner found in favor of the claimant, and awarded compensation as claimed, in accordance with the percentage payments provided for by the act.

The award to the children is not questioned, there being no dispute as to the facts respecting them, and the award being in accordance with the terms of the act. The only question specifically presented for this court's consideration by the bill of complaint is whether the finding of the deputy commissioner, pursuant to which the award of compensation to Cora Dixon was made, namely, whether she was the common-law wife of the deceased, and even if so, whether she was entitled to compensation under the act, is in accordance with law.

In proceedings of this kind, this court sits merely as a court of review, and wherever there has been substantial evidence presented to the deputy commissioner forming the basis of his findings, such findings cannot be disturbed by this court. Wheeling Corrugating Co. v. McManigal (C. C. A.) 41 F.(2d) 593. We find on the present record that the deputy commissioner was justified in deciding, as he did, that Cora Dixon was the common-law wife of the deceased. We come, therefore, to the question whether, as such wife, she was entitled to be compensated.

The following propositions are definitely established: (1) The validity of a marriage is determined by the law of the place where it was contracted. (2) Except in jurisdictions where common-law marriages are recognized, or there is some express statutory authorization, the decisions are generally in accord in holding that the common-law wife is not entitled to compensation under workmen's compensation laws, in the event of injury resulting in the husband's death,

although dependent upon his support. (3) To constitute a lawful marriage in the state of Maryland, there must be superadded to the civil contract some religious ceremony. Denison v. Denison, 35 Md. 361; Scott v. Independent Ice Co., 135 Md. 343, 109 A. 117. In spite, however, of these well-established principles of law, the deputy commissioner maintained that a different rule should be followed with respect to the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 901 et seq.), because that is a federal, or nation-wide, enactment requiring, therefore, wherever possible, such interpretation of its provisions as would insure the greatest possible uniformity. Stated in another form, this contention is that, since the act contains no definition of who is intended to be included in the word "widow," and in the words "surviving wife" as used in the act (sections 2 and 9, 33 USCA §§ 902 and 909), other than saying that "The term 'widow' includes only the decedent's wife living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time," the absence of such definition implies that Congress intended that these words should be used in their common-law significance, and not left to be determined by the laws of the various states.

The act was only passed in 1927, and this precise question has not yet been raised in any of the reported cases. While the fact that under the definition of "child," the illegitimate child is expressly taken care of under the act (section 2, 33 USCA § 902), would perhaps be sufficient, in itself, by virtue of the well-established rule of exclusion, to defeat the ruling of the deputy commissioner, it becomes unnecessary, in deciding as we do that he was in error on this point, to rely upon this ground alone, because the Supreme Court, in the case of Seaboard Air Line Ry. v. Kenney, 240 U. S. 489, 36 S. Ct. 458, 60 L. Ed. 762, has forbidden the adoption of such a construction. While it is true in that case the court was not dealing with the act now under consideration, but with the Federal Employers' Liability Act (45 USCA §§ 51–59), the effect of that decision, by virtue of the language employed, would seem conclusive in the present case.

In the Seaboard Air Line Case the court held that, since the Federal Employers' Liability Act (45 USCA §§ 51–59) contains no definition of who are to constitute the "next of kin" to whom it grants a right of recovery, the absence of such definition indicates the purpose of Congress to leave the determination of that question to the state law, and that there is no merit in the contention that Congress intended that this term should be given its common-law significance, thereby excluding all persons not included in that term under the common law. In the course of its opinion the court said, pages 493 and 494 of 240 U. S., 36 S. Ct. 458, 460, 60 L. Ed. 762:

"Plainly the statute contains no definition of who are to constitute the next of kin to whom a right of recovery is granted. But, as speaking generally under our dual system of government, who are next of kin is determined by the legislation of the various states to whose authority that subject is normally committed, it would seem to be clear that the absence of a definition in the act of Congress plainly indicates the purpose of Congress to leave the determination of that question to the state law. But, it is urged, as next of kin was a term well known at common law, it is to be presumed that the words were used as having their common-law significance, and therefore as excluding all persons not included in the term under the common law; meaning, of course, the law of England as it existed at the time of the separation from the mother country. Leaving aside the misapplication of the rule of construction relied upon, it is obvious that the contention amounts to saying that Congress, by the mere statement of a class, that is, next of kin, without defining whom the class embraces, must be assumed to have overthrown the local law of the states, and substituted another law for it, when conceding that there was power in Congress to do so, it is clear that no such extreme result could possibly be attributed to the act of Congress without express and unambiguous provisions rendering such conclusion necessary. The truth of this view will be made at once additionally apparent by considering the far-reaching consequence of the proposition, since, if it be well founded, it would apply equally to the other requirements of the statute—to the provisions as to the *surviving widow*, the husband and children, and to parents, thus, for the purposes of the enforcement of the act, overthrowing the legislation of the states on subjects of the most intimate domestic character, and substituting for it the common law as stereotyped at the time of the separation. The argument that such result must have been intended, since it is to be assumed that Congress contemplated uniformity, that is, that the next of kin entitled to

take under the statute should be uniformly applied in all the states, after all comes to saying that it must be assumed that Congress intended to create a uniformity on one subject by producing discord and want of uniformity as to many others." (Italics inserted).

The need for so-called uniformity, now alleged with respect to the Longshoremen's Act (33 USCA § 901 et seq.), may be asserted with as great, if not greater, force with respect to the Federal Employers' Liability Act (45 USCA §§ 51–59), and the fact that the Supreme Court, in the language above quoted, saw fit to reject by analogy the very construction adopted by the deputy commissioner in the present case, when applied to the equivalent words, "surviving widow," is sufficiently conclusive to set at rest any further controversy as to the proper construction to be given to the provision of the more recent federal enactment.

In conclusion, the court finds that the prayer of the bill of complaint must be granted to the extent that the finding of the deputy commissioner, to the effect that Cora Dixon is the surviving wife of the decedent and entitled to compensation under the act, was not in accordance with law. Therefore, the case will be remanded to the deputy commissioner in order that his award may be modified to conform with this opinion.