## WOODWARD v. UNITED STATES.
### No. 13648.

Circuit Court of Appeals, Eighth Circuit.
May 12, 1948.

Rehearing Denied June 16, 1948.

Louren G. Davidson, of Springfield, Mo., and Claude T. Wood, of Richland, Mo., for appellant.

Sam M. Wear, U. S. Atty. and Earl A. Grimes, Asst. U. S. Atty., both of Kansas City, Mo., H. G. Morison, Asst. Atty. Gen., and D. Vance Swann and Thomas E. Walsh, Attys., Dept. of Justice, both of Washington, D. C., for United States, appellee.

Flavius B. Freeman, of Springfield, Mo. (Neale, Newman, Neale, Freeman & Wampler, of Springfield, Mo., on the brief), for interpleader, appellee.

Before SANBORN, JOHNSEN, and COLLET, Circuit Judges.

SANBORN, Circuit Judge.

This controversy concerns the right to the proceeds of a $10,000 policy of National Service Life Insurance issued by the United States to Evelyn C. Haizlip, a service woman, who died February 17, 1945. LeRoy Haizlip, the husband of the insured, was the original beneficiary named in the policy. Shortly prior to her death, the insured changed the beneficiary to the appellant, describing him as her brother. As plaintiff, he brought this action upon the policy. He was, concededly, a brother of the insured through adoption, but the Government in its answer denied that he was within the permitted class of beneficiaries specified in the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq. (hereinafter referred to as "the Act"), and asserted that LeRoy Haizlip, the husband of the insured, had filed a claim for the insurance benefits. LeRoy Haizlip was thereupon brought into the case as an adverse claimant. He asserted that the insured's attempt to change the beneficiary was void under the Act. The assertions of the Government and the husband that the plaintiff was not entitled to the proceeds of the policy were based up-on the claim that, by § 602(g) of the Act, 54 Stat. 1008, 1010, as amended July 11, 1942, 56 Stat. 657, 659, 38 U.S.C.A. § 802 (g), the plaintiff was excluded from the permitted class of beneficiaries.

Section 602(g) of the Act, as amended in 1942, reads as follows: "The insurance shall be payable only to a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent, brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries but only within the classes herein provided."

After a pre-trial conference, the District Court ruled that the term "brother" as used in the applicable statute includes a brother by the half blood as well as by the whole blood, but does not include a brother through adoption. Since the plaintiff had asserted that he was a brother of the insured by the half blood, while her husband denied that there was any blood relationship between the insured and the plaintiff, that issue of fact was tried to a jury. The jury returned a verdict in favor of the insured's husband. Under the instructions of the court, the verdict was a determination that the plaintiff was not by blood a half brother of the insured. The court entered judgment in favor of LeRoy Haizlip upon the verdict, and the plaintiff has appealed. He contends that, under the evidence, he was entitled to judgment as a matter of law and that the court erred in its rulings on evidence and with respect to its instructions to the jury.

It is unnecessary to state the facts in detail. The insured was born May 2, 1922, at the Florence Crittenton Home in Kansas City, Missouri. Her mother was Lela Morris, of Saltillo, Tennessee, an unmarried woman twenty-five years of age. In the latter part of 1920, Lela Morris had gone to Savannah, Tennessee, to keep house for a family named Bennett. The

oldest son was "Charley" Bennett. Lela Morris left in January, 1922, because she was pregnant. She was married in 1927 to James B. Woodward, a resident of Missouri, the father of the plaintiff. In that year, James B. Woodward adopted the insured as his child, with her mother's consent. The insured's name was changed from Evelyn Morris to Evelyn Woodward at the time of her adoption. Her mother died in 1936. The insured was married to LeRoy Haizlip December 15, 1939. She and her husband both entered the armed services during the late War. James B. Woodward died in June, 1945, at the age of eighty or eighty-one.

The plaintiff, Ernest R. Woodward, of Springfield, Missouri, was born August 1, 1890, in Laclede County, Missouri, the son of James B. Woodward and Lizzie Cunningham Woodward. The parents of the plaintiff were divorced in 1916 or 1917. Thereafter the plaintiff's mother lived with him. The evidence of the plaintiff at the trial tended to prove that James B. Woodward was the natural as well as the father through adoption of the insured. The evidence adduced on behalf of the insured's husband tended to show that James B. Woodward was not the natural father of the insured, but was only her father through adoption.

■ The first question for consideration involves the proper construction of the term "brother" as used in § 602(g) of the Act.

The plaintiff contends that the term includes a brother through adoption as well as a half brother by blood. LeRoy Haizlip asserts that the term includes neither a half brother by blood nor a brother through adoption. The United States, which is interested in a proper interpretation of the term, is of the opinion that— as the District Court decided—a brother of the whole or of the half blood is included, but that a brother through adoption is not.

By the provisions of § 602(g) of the Act, as originally approved October 8, 1940, 54 Stat. 1008, 1010, 38 U.S.C.A. § 802(g), the permitted class of beneficiaries included "a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent (including person in loco parentis if designated as beneficiary by the insured), brother or sister of the insured." Section 601(e) of the Act provided that the term "child" includes an adopted child. By the amendatory Act of July 11, 1942, Congress struck out, in § 602(g), the words appearing in parenthesis, following the word "parent", namely, "(including person in loco parentis if designated as beneficiary by the insured)"; and added, at the end of § 601, a subsection (f) reading as follows: "The terms 'parent', 'father', and 'mother' include a father, mother, father through adoption, mother through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year." Therefore, the only relatives through adoption who could, by the express terms of the Act, be beneficiaries of an insured were a child, a mother, and a father.

An Administrator's Decision, Veterans Administration, No. 514, of March 10, 1943, ruled that "brothers and sisters through adoption are not included within the term 'brothers and sisters of the insured' in section 602(h) (3) (D), National Service Life Insurance Act * * *." This was equivalent to ruling that brothers and sisters through adoption were not within the class specified in § 602(g) of the Act as amended in 1942.

In Droney v. United States, D.C., D.C., 59 F.Supp. 154, decided in 1945, it was held that the terms "brother" and "sister" of the insured as used in § 602(g) of the Act apply only to a blood brother or sister and do not include brothers or sisters through adoption. To the same effect is the unreported decision in Beach v. United States, D.C., N.D. Ohio, filed April 5, 1946,[1] and Carpenter v. United States, D.C.W.D.Pa., 72 F.Supp. 510. Apparently, in no other cases has the question yet arisen.

The accepted meaning of the term "brother" as given by the dictionaries is:

---

[1] No opinion for publication.

"A male relative, a son of the same parents or parent"—The New Century Dictionary; "A male considered in his relation to another having the same parents (whole brother), or one parent only in common (half brother)"—Webster's Collegiate Dictionary; "A male person, or, by extension, a male animal, considered in his relation to another person, or animal, having the same parents (whole brother), or one parent only in common (half brother)"—Webster's International Dictionary. "One person is a brother 'of the whole blood' to another, the former being a male, when both are born from the same father and mother. He is a brother 'of the half blood' to that other (or half brother) when the two are born to the same father by different mothers or by the same mother to different fathers. * * * The phrase 'brothers and sisters' as used in statutes of descent and in inheritance tax statutes is commonly construed to include half brothers and half sisters." Black's Law Dictionary, Third Edition, p. 253–254. See, also, Words and Phrases, Perm.Ed., Vol. 5, p. 845.

The plaintiff argues: (1) that in using the term "brother" in § 602(g) of the Act, without defining the term, Congress will be presumed to have inferentially adopted the definitions of the term found in the World War Veterans' Act of 1924, 43 Stat. 607, 608, 38 U.S.C.A. § 424(6) and (7), which include a brother through adoption; (2) that, in the absence of a Congressional definition of the term "brother" as used in the National Service Life Insurance Act of 1940 (as amended), Missouri law governs, and since the plaintiff became, through adoption, a full brother of the insured under Missouri law, he was within the permitted class of beneficiaries specified in § 602(g), (citing Seaboard Air Line Railway v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762; Poff v. Pennsylvania Railroad Co., 327 U.S. 399, 66 S.Ct. 603, 90 L.Ed. 749, 162 A.L.R. 700, and other cases); and (3) that the term "brother" should be liberally, and not restrictively, construed in order to effectuate the intent of Congress.

We think that, since the National Service Life Insurance Act of 1940 did not contain the broad definitions of the term "brother" which were included in the World War Veterans' Act of 1924, it is reasonable to assume that Congress intended that those definitions should not apply to the 1940 Act, and meant to restrict the class of permissible beneficiaries under the 1940 Act to blood relatives, except as expressly otherwise provided therein. This is borne out by the amendatory legislation of July 11, 1942, which expanded the class of permissible beneficiaries specified in the Act by adding parents through adoption, but which did not add brothers and sisters through adoption.

The plaintiff's argument that Congress intended to leave the determination of the question whether a brother through adoption is a brother within the meaning of the Act to state law, is based largely on the case of Seaboard Air Line Railway Co. v. Kenney, supra, 240 U.S. 489, 36 S. Ct. 458, 60 L.Ed. 762. The question in that case was whether Congress intended that the meaning of the phrase "next of kin" as used in the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., should be determined by the common law as it existed at the time this country separated from England or state law. The Supreme Court held that the meaning of the phrase "next of kin" depended upon applicable state law.

In the instant case, the choice is not between applying an ancient common-law definition of the term "brother" and a state-law definition. The choice is between accepting the ordinary meaning of the term "brother" and its asserted statutory meaning in Missouri. We think that it is fair to assume that Congress, in using the term "brother" in relation to policies of National Service Life Insurance to be issued by the Government to those in its armed services throughout this country and abroad, intended the term to be taken and understood in its plain, ordinary, and popular sense. See Bergholm v. Peoria Life Insurance Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L.Ed. 416. Policies of National

Service Life Insurance are, of course, contracts of the United States and possess the same legal incidents as other government contracts. Lynch v. United States, 292 U.S. 571, 576, 54 S.Ct. 840, 78 L.Ed. 1434. The validity and construction of such policies present questions of federal law. Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838; United States v. County of Allegheny, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209.

Our conclusion is that the ruling of the District Court that, at the time of the insured's death, the term "brother" as used in § 602(g) of the Act, included a brother by the whole blood and a brother by the half blood but did not include a brother through adoption, was not erroneous.

The plaintiff asserts that upon the trial of the issue raised by the denial of his claim that the insured was the natural daughter of James B. Woodward, the court erred in the following respects: (1) in denying the plaintiff's motion for a directed verdict; (2) in admitting in evidence a certified copy of the birth certificate of the insured containing information as to her paternity; (3) in rejecting evidence of a family resemblance between James B. Woodward and the insured; and (4) in giving certain instructions and in refusing to give instructions requested by the plaintiff.

The trial court did not err in refusing to direct a verdict for the plaintiff. The plaintiff's evidence consisted of the testimony of relatives and acquaintances of James B. Woodward as to alleged admissions made by him and by his second wife, the insured's mother, during their lifetime, that the insured was the natural child of James B. Woodward. The evidence of the plaintiff was not free from improbabilities and was inferentially contradicted by the evidence adduced on behalf of LeRoy Haizlip. The weight of the evidence and the credibility of the witnesses who gave it were for the jury to determine. Compare, Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440-444, and cases therein referred to.

The certified copy of the birth certificate of the insured, which was received in evidence and which stated that her father was "Charlie" Bennett, was, we think, inadmissible in evidence. The statutes of Missouri, in force at the time the insured was born, and still in force, required the registration of all births. (R.S. Mo.1919, § 5807; R.S.Mo.1939, § 9771, Mo. R.S.A.). It was the duty of the attending physician to file a certificate of birth, "properly and completely filled out," with the local registrar of the district in which the birth occurred. (R.S.Mo.1919, § 5808; R.S.Mo.1939, § 9772, Mo.R.S.A.) The statutes specified the items of information the certificate should contain. (R.S.Mo. 1919, § 5809; R.S.Mo.1939, § 9773, Mo.R. S.A.) Among these items relative to a birth were: "(5) Whether legitimate or illegitimate. (6) Full name of father. (7) Residence of father. (8) Color or race of father. (9) Birthplace of father; * * *. (10) Age of father at last birthday, in years. (11) Occupation of father. (Answers shall not be recorded to items 6, 7, 8, 9, 10 and 11 in case of illegitimate births.)"

The local registrar was required to examine each birth certificate to see that it was properly made out, and to make, in a record book, a copy of each birth certificate registered by him, and to transmit to the State registrar all original certificates. (R.S.Mo.1919, § 5814; R.S.Mo.1939, § 9779, Mo.R.S.A.) The statutes provided that a copy of the record of a birth or death, certified by the State registrar to be a true copy thereof, shall be prima facie evidence of the facts therein stated. (R.S. Mo.1919, § 5816; R.S.Mo.1939, § 9781, Mo. R.S.A.) The doctor who attended at the birth of the insured stated in his certificate that the birth was illegitimate, but, nevertheless, recorded in the certificate the information relative to paternity which the statute provided should not be recorded. This information showed the father to be "Charlie Bennett," of "Saltilo, Tenn."; age 26 years; occupation, clerk.

The District Court, being of the opinion that the applicable statutes of Missouri required the doctor to include in his certificate the information relative to the insured's paternity, and merely precluded the local registrar from recording the informa-

tion locally, held that the birth certificate, as a record of the State registrar, was prima facie evidence of all facts therein stated. We cannot agree.

■ We think that, under Missouri law, it was the duty of the attending physician not to record in the birth certificate any information relative to the paternity of the child, since the birth was illegitimate. A certified copy of a certificate of birth or death is, in Missouri, prima facie evidence of only such facts as are required by statute to be stated therein. Childress & Mullanphy v. Cutter, 16 Mo. 24, 46; Reynolds v. Prudential Insurance Co. of America, 88 Mo.App. 679, 684; Callahan v. Connecticut General Life Insurance Co., Mo.Sup., 207 S.W.2d 279, 286. This is the rule generally. 20 Am.Jur., Evidence, § 1030, p. 869, 870. Moreover, the fact of the paternity of an illegitimate child would seem to be a matter not within the personal knowledge of the attending physician. See Callahan v. Connecticut General Life Insurance Co., supra, page 286 of 207 S.W.2d.

■ LeRoy Haizlip contends that, even if it was error to receive this evidence, the error was harmless. The evidence was obviously prejudicial and very likely fatal to the plaintiff's claim that his father was the natural father of the insured. Since the evidence was incompetent on the issue of paternity, its admission will require a new trial.

■ The refusal of the court to receive evidence that there was a family resemblance between the insured and James B. Woodward was, in our opinion, not prejudicial error. Pictures of both had been received in evidence. The questions relating to resemblance, to which objections were sustained, did not call for a word picture of the insured's physical appearance and that of James B. Woodward, but called, rather for opinions of witnesses as to whether there was, or whether they had noticed, a family resemblance or a physical similarity of bone structure of the head and face. We think that the court was justified in excluding this evidence. The controversial subject of the admissibility of evidence of family resemblance on the issue of blood relationship is considered in 20 Am.Jur., Evidence, § 883, p. 743. See, also, 40 A.L.R. 100; 95 A.L.R. 315. Assuming the admissibility of evidence descriptive of pronounced family traits upon an issue of blood relationship, we think that in this case the proffered evidence could have been of little, if any, probative value. James B. Woodward was sixty-two years old at the time he married the insured's mother. The insured was then five, and was only twenty-three years old when she died, while Woodward was eighty or eighty-one. The likelihood of any significant resemblance was only a remote possibility. We think the question of the admission or rejection of evidence of family resemblance to prove blood relationship can ordinarily be left to the sound discretion of the trial court.

■ We are of the opinion that the court committed no errors in its instructions or in refusing to give instructions requested by the plaintiff. The charge properly and adequately submitted the issue of fact which the jury was to decide. The jurors could have been under no illusions as to what the issue was. Compare, Hall v. Aetna Life Insurance Co., 8 Cir., 85 F.2d 447, 450, 452.

The judgment is reversed, and the case is remanded for a new trial on the sole ground that the court erred in admitting in evidence the statement as to the paternity of the insured contained in the certified copy of her birth certificate which was received in evidence.