**LEMBCKE v. UNITED STATES (LEMBCKE et al., third-party-defendants).**

No. 143, Docket 21530.

United States Court of Appeals
Second Circuit.

Argued March 8, 1950.

Decided May 1, 1950.

Bunis and Bunis, Rochester, New York, for appellant, Burton J. Greene, Rochester, of counsel.

George L. Grobe, U. S. Atty., Buffalo, N. Y., Frederick R. Clark, Rochester, New York, Guardians ad litem of appellee Anna L. Lembcke.

John L. Skivington, Rochester, New York, Guardian ad litem of appellees Arlene Lila Lembcke, Kathryn Bernice Lembcke and Rita Elaine Lembcke.

Before SWAN, CLARK and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an action to recover $9,393.90, being the unpaid amount due under a deceased veteran's National Service Life Insurance policy which named the plaintiff as beneficiary. The ultimate question presented by the appeal is whether the appellant is the "widow" of the deceased veteran under 38 U.S.C.A. § 802(g) which specifies the permissible beneficiaries of National Service Life Insurance.

The case was tried without a jury upon stipulated facts. So far as they are relevant here, it appears that throughout the year 1940 Charles W. Lembcke, the decedent, was the husband of Bernice Hickey Lembcke and the plaintiff was the wife of Roy Sanger. These four persons were residents of New York. On December 7, 1940 a child was born to plaintiff and decedent. Subsequently, both were divorced in New York by their respective spouses on the ground of adultery. The divorce decrees respectively forbade decedent and plaintiff to marry any person during the life of his or her former spouse without the divorce court's consent. Without obtaining such consent decedent and plaintiff were married in Pennsylvania on June 21, 1943. At the time of their marriage their former spouses were still alive. Plaintiff and decedent continued to live together in Pennsylvania from June 1943 to May 15, 1945, when he was inducted into military service. In November 1945 the plaintiff moved back to New York where she is presently residing. The decedent was killed in military service in January 1946. He had taken out National Service Life Insurance in the amount of $10,000, naming plaintiff as beneficiary and describing her in the application as his wife. After plaintiff had been paid several instalments under the policy, she was notified by the Veterans Administration that she was not decedent's

legal widow and therefore not within the permissible class of beneficiaries of National Service Life Insurance. 38 U.S.C.A. § 802(g). She sued for the balance payable under the policy and the United States interpleaded the four infant children of the decedent, admitting liability under the policy to such of them as the court should find entitled. The court found two of the children legitimate and directed payment to them. The plaintiff has appealed.

■ The first question presented is whether the marriage contracted in Pennsylvania between decedent and plaintiff is a valid marriage. For the present discussion we assume that Pennsylvania law is determinative. Restatement, Conflict of Laws, § 121; Brown v. United States, 3 Cir., 164 F.2d 490; but compare Woodward v. United States, 8 Cir., 167 F.2d 774. It is well settled that the prohibition against remarriage contained in the New York divorce decrees is not a ground for invalidating the subsequent marriage of plaintiff and decedent contracted in Pennsylvania. Van Voorhis v. Brintnall, 86 N.Y. 18, 40 Am.Rep. 505; Beaudoin v. Beaudoin, 270 App.Div. 631, 62 N.Y.S.2d 920; Loughran v. Loughran, 292 U.S. 216, 222, 54 S.Ct. 684, 78 L.Ed. 1219; Restatement, Conflict of Laws, § 131. If the marriage is to be held invalid, it must be because of § 169 of Title 48 "Marriage," in Purdon's Pennsylvania Statutes, Annotated. This section reads as follows: "The husband or wife, who shall have been guilty of the crime of adultery, shall not marry the person with whom said crime was committed during the life of the former wife or husband; but nothing herein contained shall be construed to extend or affect or render illegitimate any children born of the body of the wife during coverture."

The same provision in identical words appears also as section 92 of Title 23, "Divorce." Although the prohibition against marrying the paramour is imposed upon the husband or wife "who shall have been guilty of the crime of adultery," this language has been construed to mean that the adulterer must have been divorced for that reason. Proof that the parties to the

marriage had in fact committed adultery is irrelevant if the divorce was granted for a different cause. Beegle's Estate, 64 Pa. Super. 180; and see In re Palmer's Estate, 275 App.Div. 792, 90 N.Y.S.2d 179.

In the case of a person domiciled in Pennsylvania and there divorced for adultery, the statute renders void a subsequent marriage with the corespondent, whether the marriage is performed within Pennsylvania or in another state to which the parties went in order to evade the prohibition of the Pennsylvania statute. In re Stull, 183 Pa. 625, 39 A. 16, 39 L.R.A. 539, 63 Am.St.Rep. 776; Restatement, Conflict of Laws, § 132(d). No other case in the Supreme Court of Pennsylvania involving the statute has been discovered. However, the Stull case is not conclusive of the case at bar. There a Pennsylvania citizen who was divorced by a Pennsylvania decree married his paramour (also a Pennsylvania citizen) in Maryland, and then returned with her to his home in Pennsylvania. On his death she was denied appointment as administratrix of his estate because not his legal widow since their marriage violated the statute. Obviously the statute applied to them. Here the question is whether it applies to persons divorced in New York who were residents of New York when the divorce decrees were granted.

If the question is open to our independent determination—a matter to be discussed hereafter—we think it plain that the above quoted prohibition against marriage between adulterer and paramour should be construed to apply only to a resident of Pennsylvania who was divorced for adultery by the decree of a Pennsylvania court. In our opinion, it does not apply to parties as to whom Pennsylvania had no contact prior to their contracting a marriage in that state. The prohibition was originally enacted as section 9 of the Act of March 13, 1815 entitled "An Act Concerning Divorces." That Act dealt with causes for divorce, with what the petition should contain and in what court be filed, with process, decrees, costs and appeals. In short, it was a complete code for Pennsylvania divorces. It applied only to citizens of Pennsylvania, section 11 expressly declaring that only citizens of the state who had resided therein for at least one year were entitled to divorce under the Act. The same residential requirement now appears as section 16 of Title 23, but the citizenship requirement has been repealed. The fact that the prohibition under discussion was first enacted as part of a general divorce statute which applied only to citizens is a persuasive indication of legislative intent to restrict the prohibition to persons who have been divorced by a Pennsylvania decree.[1] Such intent is further emphasized by section 38 of Title 23 which provides for giving notice to the corespondent when adultery is charged as the cause for divorce. The foregoing history of the origin of the prohibition under discussion and of related provisions in the present statute, indicates clearly to our minds that the disability of the adulterer to marry his paramour is imposed only on persons who have been named in a Pennsylvania suit for divorce as adulterer and corespondent; hence the statute does not invalidate the marriage between plaintiff and decedent since they were divorced by their respective spouses by New York decrees.

However, the only Pennsylvania case we have been able to discover has adopted a construction of the statute contrary to the view we have expressed. That case is Kalmbacher v. Kalmbacher, 63 Pa.Dist. & Co.R. 195, a decision of the court of common pleas for Susquehanna County. It was a suit for annulment of a marriage contracted in Pennsylvania under circumstances similar to those of the case at bar. The husband was divorced by his wife in New York, both being residents of New York, on the ground of adultery with a woman who was also a resident of New York. The divorced husband married the corespondent in Pennsylvania and later

1. See Commonwealth ex rel. Aronson v. Connor (C. P. Lackawanna County), 6 Lack.Jur. 43: "It is competent for the law making power of any state, in furtherance of its public policy, to impose a disability upon its citizens restricting their right to contract a marriage."

brought suit in Pennsylvania to annul the marriage. A decree of annulment was granted on the ground that the Pennsylvania statute rendered the marriage void *ab initio*. In re Stull's Estate, 183 Pa. 625, 39 A. 16, 39 L.R.A. 539, 63 Am.St.Rep. 776, was relied upon as authority without discussion of the fact that there the divorce for adultery was granted to a citizen of Pennsylvania by a Pennsylvania decree, not to a citizen of New York by a New York decree. The Kalmbacher decision does not appear ever to have been cited. We are therefore faced with the necessity of determining whether we are constrained to follow the construction given the statute by a single decision of a county court of common pleas, despite our firm conviction that the Supreme Court of Pennsylvania, were the question before it, would construe the statute differently.

■■ If this were a diversity case, that question would not arise, for then we should have to follow the New York conception of the Pennsylvania law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Johnson v. Eastern Air Lines, 2 Cir., 177 F.2d 713, 714. And New York courts have agreed with our view that the Pennsylvania statute is applicable only to such persons as have been parties to divorce proceedings in that state, and have held that where the guilty party to a New York divorce marries his paramour in Pennsylvania their marriage is valid. Stack v. Stack, 6 Dem.Sur. 280; In re Palmer's Estate, 192 Misc. 385, 79 N.Y.S.2d 404, affirmed, 275 App.Div. 792, 90 N.Y.S.2d 179.

However, this is not a diversity case. Here federal jurisdiction rests on a federal statute, 38 U.S.C.A. § 817, and the question for decision is the meaning of the word "widow" as used in 38 U.S.C.A. § 802(g). Interpretation of words used in a federal statute is a federal question, not to be determined by local law, unless the statute is construed to intend the meaning to depend upon applicable state law. See Seaboard Air Line v. Kenney, 240 U.S. 489, 493, 36 S.Ct. 458, 60 L.Ed. 762; Poff v. Pennsylvania R. Co., 327 U.S. 399, 401, 66 S.Ct. 603, 90 L.Ed. 749. A case in point under the National Service Life Insurance Act is Woodward v. United States, 8 Cir., 167 F.2d 774. There the word to be construed was "brother." The choice lay between accepting the ordinary meaning of the word and its meaning under the local law of Missouri which was asserted to include a brother through adoption. The court held that determination of whether a claimant falls within the statutory class of beneficiaries is a federal question, and that the word "brother" was used in its ordinary, popular sense and did not include a brother through adoption despite the state statute. We agree. Policies of national service life insurance are contracts of the United States and it may reasonably be inferred that Congress intended such contracts to have a uniform interpretation throughout the nation in so far as they use words, such as "brother," having a plain, ordinary and popular meaning independent of local statutes.[2] But the word "widow" has no popular meaning which can be determined without reference to the validity of the wife's marriage to her deceased husband, and the validity of such marriage necessarily depends upon the law of the place where the marriage was contracted. Such was the decision in Brown v. United States, 3 Cir., 164 F.2d 490. We agree also with this case, and see no inconsistency between it and the Woodward case, supra. In using the word "widow," without definition, we think Congress must have intended its meaning to be determined by the applicable local law, as it did in using the term "next of kin" in the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762. Thus, we are forced back to the question whether we

2. For cases involving other federal statutes, see Lyeth v. Hoey, 305 U.S. 188, 193, 59 S.Ct. 155, 83 L.Ed. 119, 119 A. L.R. 410; Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838; United States v. Allegheny County, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209.

are constrained to follow the construction given to the Pennsylvaniat statute in Kalmbacher v. Kalmbacher, 63 Pa.Dist. & Co. R. 195.

In a diversity case the federal court must follow the decision of a state trial court, absent higher state authority, because where that is the basis of jurisdiction it is inadmissible that there should be one rule of state law for litigants in the state courts and another for litigants who bring the same question before the federal courts sitting within the state. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 180, 61 S.Ct. 176, 85 L.Ed. 109; cf. King v. Order of United Commercial Travelers, 333 U.S. 153, 159, 68 S.Ct. 488, 92 L.Ed. 608. But where federal jurisdiction does not rest on diversity, we believe the federal court has somewhat more freedom to differ with the decision of a single trial judge in a state court, although we confess that no decision on this point has been found. For reasons already stated, we disagree with the construction which the Kalmbacher case puts upon the statute and believe that it would not be approved by the Supreme Court of Pennsylvania. Accordingly we hold that the decision on appeal must be reversed and judgment awarded to the appellant. It is so ordered.