Mary Virginia BELL, Administratrix of the Estate of John Ware Bell, Deceased, Libelant,

v.

TUG SHRIKE, Southern Transportation Company, Inc., Southern Tug Corp., ALLIED CHEMICAL BARGE NO. 1, and Allied Chemical Corporation, Respondents.

No. 8053.

United States District Court
E. D. Virginia,
Norfolk Division.

Feb. 26, 1963.

As Amended April 17, 1963.

Sidney H. Kelsey, Norfolk, Va., is proctor for libelant.

Jett, Sykes & Coupland (Roy L. Sykes), Norfolk, Va., for respondents.

WALTER E. HOFFMAN, Chief Judge.

The facts of this case are not in dispute. In an action under the Jones Act, 46 U.S.C. § 688, libelant seeks to recover damages for the death of her alleged husband, John Ware Bell, who was a member of the crew of the tug SHRIKE owned by Southern Tug Corporation and operated by Southern Transportation Company, Inc., as charterer thereof, when the vessel capsized and sank on September 12, 1959, resulting in the death of John Ware Bell.

Shortly prior to the date of trial the action was conditionally settled. Certain children had been born of decedent's marriage to Helen Woolard (Bell) and the sum of $15,500.00 was paid to the North Carolina guardian of these children, pursuant to the court's order of October 25, 1960.

The total settlement figure agreed upon, subject to the conditions hereinafter mentioned, was $60,000.00. From this amount the aforesaid sum of $15,500.00 was deducted and paid, leaving in controversy the remaining sum of $44,500.00.

The issue now before the court is whether the libelant, in her own right, is entitled to recover as the alleged widow or common law wife of John Ware Bell. If she is entitled to recover, the remaining balance of said settlement is to be paid to her. If she is not entitled to recover, the case is at an end, as the $15,500.00 has been paid and distributed to decedent's children.

A chronological sequence of the marital life of John Ware Bell will perhaps give a better focus to the problem presented. It is as follows:

| Date | John Ware Bell |
| --- | --- |
| March 16, 1940 | Married Helen Woolard |
| June 12, 1951 | Divorced by Helen Woolard Bell |
| June 19, 1951 | Married Catherine Estal Smith |
| December 13, 1956 | Married Mary Virginia White (the libelant) |
| September 18, 1957 | Divorced by Catherine Estal Smith Bell |
| September 12, 1959 | John Ware Bell died |

Initially, libelant argued that decedent's marriage to Catherine Estal Smith was not valid because he did not wait until the end of the North Carolina term of court on June 20, 1951, before going through the marriage ceremony and, even if decedent's marriage to Mary Virginia White (the libelant) was illegal, she is a putative widow and, as such, entitled to recover under the Jones Act.

These contentions were substantially abandoned by libelant at the time of final argument. Indeed they must be abandoned as the great preponderance of the evidence supports the view that, under North Carolina law, decedent was free to marry immediately upon the entry of the divorce decree on June 12, 1951. His marriage to Catherine Estal Smith on June 19, 1951, took place in Norfolk, Virginia. While still legally married to Catherine Estal Smith Bell, he illegally married Mary Virginia White at Mathews, Virginia, on December 13,

1956. The following year, on September 18, 1957, decedent was divorced by Catherine Estal Smith Bell in the Circuit Court of the City of Portsmouth, Virginia. Decedent was then free to go through another marriage ceremony with Mary Virginia White and thereby legalize their bonds of matrimony but this event never took place. As far as the record indicates, decedent and Mary Virginia White (Bell) lived together in Virginia as husband and wife from December 13, 1956, until his death on September 12, 1959.

Nor can it be successfully urged that decedent's illegal marriage to Mary Virginia White constituted a putative marriage, defined in law as a marriage contracted in good faith and in ignorance (on one or both sides) that impediments exist which render it unlawful. Black's Law Dictionary, 3rd Ed., 1933. In one case, Lawson v. United States, 88 F.Supp. 706, District Judge Irving R. Kaufman, now a member of the Court of Appeals for the Second Circuit, sustained the right of a putative wife to recover under the Death on the High Seas Act but this holding was reversed on appeal, Lawson v. United States, 2 Cir., 192 F.2d 479, cert. den. 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323. Cf. Beebe v. Moormack Gulf Lines, Inc., 5 Cir., 59 F.2d 319; Winder v. Consolidated Underwriters, D.C., 25 F.Supp. 451; Tetterton v. Arctic Tankers, Inc., D.C., 116 F.Supp. 429. The overwhelming weight of the evidence establishes that Mary Virginia White (Bell) was not the putative wife of the decedent; she knew, prior to her illegal marriage ceremony on December 13, 1956, that decedent was then still married to Catherine Estal Smith Bell. That she did not see fit to enter into another marriage contract with deccdent subsequent to September 18, 1957—when the legal impediment had been removed—is to be regretted but it is well settled that the divorce decree does not relate back so as to validate an attempted marriage by one of the parties prior to the rendition of the decree. 55 C.J.S. Marriage § 68;

Tetterton v. Arctic Tankers, Inc., supra. As the libelant's oral argument and brief did not urge a recovery on any theory of libelant's status as an alleged putative "wife" or "widow" the facts supporting the court's conclusion that Mary Virginia White (Bell) was not the putative wife of John Ware Bell will not be stated herein. Moreover, the right to recover as the putative widow under the Jones Act has been rejected. See authorities cited *infra*.

The principal thrust of libelant's case lies in her contention that there is no rival claimant "widow"; that admiralty seeks uniformity in application and that to resort to Virginia law would constitute an unconstitutional delegation by Congress to the several states granting such states the power to declare and control the rights and liabilities of parties arising out of negligently caused deaths occurring upon navigable waters. It is conceded that Virginia does not recognize common law marriages. The argument is one of interest for students of law but to accept this doctrine would require a reversal of many cases already decided to the contrary by the United States Supreme Court.

When Congress enacted the Merchant Marine Act of 1920, including the Jones Act, the rights and remedies granted to seamen were incorporated by specific reference into similar prior legislation known as the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. By virtue of this incorporation, the applicable provisions of the F.E.L.A. were made a part and parcel of the Jones Act. Panama R. R. Co. v. Johnson, 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748; Buzynski v. Luckenbach S.S. Co., 277 U.S. 226, 48 S.Ct. 440, 72 L.Ed. 860; Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686.

In 1916, four years prior to the adoption of the Jones Act, the Supreme Court, in Seaboard Air Line Ry. v. Kenney, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762, held that since Congress had not defined the various classes of beneficiaries provided

for under the F.E.L.A., its intent must be taken to be that federal courts are to look to the domestic relations laws of the states. The Kenney case involved the death of a railroad employee, with one legitimate child and two illegitimate children claiming the recovery. As to the deceased employee, they were all his children and, to this extent, they were not rival claimants. The same argument now advanced with respect to lack of uniformity was urged in Kenney, but the Supreme Court held that it was the intent of Congress to resolve the question as to who constituted "next of kin" by looking to state law (240 U.S. 493, 494, 36 S.Ct. 458, 460). See also Poff v. Pennsylvania R. Co., 327 U.S. 399, 66 S.Ct. 603, 90 L.Ed. 749.

In Panama R. R. Co. v. Johnson, supra, the constitutionality of the Jones Act was upheld. In considering the uniform operation of the Jones Act, the Supreme Court said (264 U.S. 392, 44 S.Ct. 396):

"The asserted departure from the restriction respecting uniformity in operation is without any basis. The statute extends territorially as far as Congress can make it go, and there is nothing in it to cause its operation to be otherwise than uniform. *The national legislation respecting injuries to railway employees engaged in interstate and foreign commerce which it adopts has a uniform operation*, and neither is nor can be deflected therefrom by local statutes or local views of common law rules." (Emphasis supplied)

From the foregoing it will be noted that, only eight years following Kenney, the Supreme Court recognized the uniformity of operation of F.E.L.A. and the Jones Act.

Federal courts making a determination of the requisite legal status necessary to effect recovery under a number of federal statutes have consistently considered a valid marriage under state law essential, and have turned to the domestic relations law of the states for definitions of such familial status [1].

The argument that a common law wife, not recognized by the laws of Virginia as a "wife", may bring herself within the meaning of a "widow" under the Jones Act merely because there is no rival claimant asserting her right of recovery as a widow, is untenable. If the libelant was not within the class of persons whom Congress intended should be entitled to a recovery for the negligently caused death of a seaman, the fact that she is the only one claiming to be a member of that class does not bring her within it. To so hold would permit any woman, having had illicit relations with a seaman, to maintain an action under the Jones Act under the theory that she is the only person claiming to be a "widow". We do not suggest that this example is applicable to the present set of facts, but where do we draw the line? If the federal courts do not apply the existing state law of domestic relations, we will have created a federal common law of domestic relations wherever a federally-created right is involved. As was said in De Sylva v. Ballentine, 351 U.S.

---

1. See footnote 5, Lawson v. United States, 2 Cir., 192 F.2d 479, 481, cert. den. 343 U.S. 904, 72 S.Ct. 635, 96 L.Ed. 1323. Decisions under actions involving National Service Life Insurance holding to this effect are Castor v. United States, 8 Cir., 174 F.2d 481, cert. den. 338 U.S. 836, 70 S.Ct. 45, 94 L.Ed. 511, reh. den. 338 U.S. 901, 70 S.Ct. 245, 94 L.Ed. 555; Schurink v. United States, 5 Cir., 177 F.2d 809, cert. den. 339 U.S. 928, 70 S.Ct. 627, 94 L.Ed. 1349; Gehm v. United States, 83 F.Supp. 1003; Cavanaugh v. United States, D.C., 94 F.Supp. 776. Like decisions under War Risk Insurance are United States v. Robinson, 5 Cir., 40 F.2d 14; Schiefer v. United States, 2 Cir., 52 F.2d 527. And under the Longshoremen and Harbor Workers' Compensation Act, Green v. Crowell, 5 Cir., 69 F.2d 762. cert. den. 293 U.S. 554, 55 S.Ct. 88, 79 L.Ed. 656; Bolin v. Marshall, 9 Cir., 76 F.2d 668, cert. den. 296 U.S. 573, 56 S.Ct. 116, 80 L.Ed. 404.

570, 580, 76 S.Ct. 974, 980, 100 L.Ed. 1415:

> "The scope of a federal right is, of course, a federal question, but that does not mean that its content is not to be determined by state, rather than federal law. * * * This is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern."

To the same effect, see Brantley v. Skeens, 105 U.S.App.D.C. 246, 266 F.2d 447; Sears v. Austin, 9 Cir., 292 F.2d 690, cert. den. 368 U.S. 929, 82 S.Ct. 365, 7 L.Ed.2d 192; Gibson v. Hughes, D.C., 192 F.Supp. 564.

Libelant's reliance upon Thompson v. Lawson, 347 U.S. 334, 74 S.Ct. 555, 98 L.Ed. 733, is misplaced. That was a case under the Longshoremen and Harbor Workers' Compensation Act and may be distinguished as the Act makes its own definition of the word "widow". Resort to state law was wholly unnecessary. The dicta in Thompson tends to support the conclusion that it is limited to claims under the compensation act.

█ █ It is said that Congress may not constitutionally delegate power to the states to declare the rights and liabilities arising out of a maritime injury. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; Washington v. W. C. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646. The authorities cited relate to attempts by state legislatures to apply their own workmen's compensation statutes to injuries within the admiralty and maritime jurisdiction. The difficulty with libelant's argument is that the state domestic relations law does not, standing alone, determine whether a claimant in a Jones Act death action is entitled to recover. It is the maritime law of the United States, through the F.E.L.A. as incorporated within the Jones Act, which has been interpreted to authorize the definition of statutory beneficiaries by reference to state law. There is no admiralty law of domestic relations. The cases of Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56, and Union Fish Co. v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261, are inapposite. There are instances in which contracts are within the field of admiralty jurisdiction, but the regulation of such contracts is left with the states. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, at p. 313, 75 S.Ct. 368, at p. 370, 99 L.Ed. 337. And, likewise, federal inspection laws have been held to yield to local ordinances invoking smoke control regulations. Huron Portland Cement Co. v. Detroit, 362 U.S. 440, at p. 445, 80 S.Ct. 813, at p. 817, 4 L.Ed.2d 852. There can be no doubt as to the constitutionality of resort to the domestic relations laws of the several states in aid of defining statutory beneficiaries in death actions brought under the Jones Act.

Adopting this memorandum in accordance with Admiralty Rule 46½, proctors for the respondent will prepare and present, after inspection by opposing proctor, an appropriate decree holding that Mary Virginia White (Bell) is not entitled to any portion of the recovery or settlement occasioned by the death of John Ware Bell and, in the light of the prior payment for the benefit of the children of John Ware Bell, the action will be dismissed. Taxable court costs for instituting the action and for all proceedings to and including October 25, 1960, will be assessed against the respondents. Taxable court costs for proceedings subsequent to October 25, 1960, will be assessed against the libelant.