**Richard HODGES, Plaintiff-Appellant,**

**v.**

**JOSEPH E. SEAGRAM & SONS, INC., et al., Defendants-Appellees.**

**No. 27815**

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

Oct. 15, 1969.

Rehearing Denied Jan. 28, 1970.

Elton M. Montgomery, Jennings, Montgomery & Dies, Graham, Tex., for plaintiff-appellant.

Stanley P. Wilson, McMahon, Smart, Sprain, Wilson & Camp, Abilene, Tex., for Joseph E. Seagram & Sons, Inc.

Ronald L. Neill, Dallas, Tex., for Mibil.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

**564**

PER CURIAM:

■ We have concluded on the merits that oral argument is unnecessary in this case. Accordingly, we have directed the Clerk to place the case on the Summary Calendar and to notify the parties of this fact in writing. See Rule 18 of the Rules of this Court and Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804.

Seagram holds the oil and gas leasehold title on Hodges's ranch lands. Hodges sued Seagram in a Texas Court for salt water damages to his land occasioned by Seagram's negligence. Seagram removed the case to the federal district court. After a full trial, the district judge submitted special interrogatories to the jury. On the basis of those interrogatories, he awarded judgment to Seagram. We reverse.

The jury specifically found that Seagram had been negligent in its use of salt water on Hodges's land and that this negligence was the proximate cause of damages to the land. Neither party contests these findings. The confusion concerns the proper interpretation of the jury's answers to the interrogatories on damages. In relevant part, the jury made the following findings:

QUESTION NO. 5:

From a preponderance of the evidence, find the fair market value of the surface of plaintiff's lands on or about January 31, 1965, exclusive of the portions thereof reasonably necessary in the conduct of the oil and gas lessee's operations thereon.

\* \* \* \* \* \*

ANSWER: *$185,000.00*

\* \* \* \* \* \*

QUESTION NO. 6:

From a preponderance of the evidence find the fair market value of the surface of plaintiff's land, exclusive of the portions thereof reasonably necessary in the conduct of the oil and gas lessee's operations thereon, after the salt water damage about which plaintiff complains.

\* \* \* \* \* \*

ANSWER: *$170,000.00*

\* \* \* \* \* \*

QUESTION NO. 9:

Do you find from a preponderance of the evidence that, prior to the time Seagram commenced its operations as an oil and gas lessee on plaintiff's land on November 1, 1963,[1] the plaintiff's property was damaged by salt water to any extent?

\* \* \* \* \* \*

ANSWER: *Yes.*

QUESTION NO. 10:

From a preponderance of the evidence find what percentage, if any, of the damage of plaintiff's land by salt water pollution or contamination was the result of conditions which existed prior to November 1, 1963.

Your answer will state such percentage as you may find, if any. If you are unable to determine a percentage from the preponderance of the evidence, the form of your answer will be, "Unknown".

ANSWER: *Unknown.*

The inescapable conclusion from the jury's answers to questions 5 and 6 is that Hodges's land has suffered a $15,000 diminution in market value since January 31, 1965. The answer to question 10 however, might have seemed open to alternative interpretations. (1) The jury might have construed it as asking what portion of the $15,000 decrease in market value since 1965 was attributable to conditions which had come into being before Seagram obtained its lease. (2) The jury might have construed it as asking what portion of the aggregate salt water damage—not limited to that occurring after 1965—had occurred before 1963. But both Hodges and Seagram argue for the latter interpretation. Seagram feels that it cannot "seriously be contended that there was any joinder of pre-existing and completed acts with those occurring in the Seagram operations" and that the damage from the pre-existing acts was

---

1. Seagram assumed the leasehold on that date.

"already in existence". Accordingly, we proceed on that premise. Seagram argues that the jury's inability to determine the percentage of pre-1963 damage leads to the conclusion that Seagram's individual responsibility cannot be assessed, a requirement in cases of divisible injury under Texas law. But we do not reach the question of Texas law, because question 5 effectively foreclosed the enhancement of damages by any pre-1963 injury. The $15,000 produced by subtracting the answer in question 6 from the answer in question 5 can refer only to damages occurring after 1965, when Seagram was in possession of its leasehold.

The judgment of the district court will be reversed, with instructions to enter judgment for the plaintiff in the amount of $15,000 plus accrued interest on said sum at the rate of 6 percent per annum from and after January 31, 1965.