Patricia LeBouef MURPHY, as Administratrix of the Estate of Edward Fontenot, Deceased, etc., Plaintiff-Appellee,

v.

HOUMA WELL SERVICE et al.,
Defendants,
and
Eva C. Fontenot, Intervenor-Appellant.

Summary Calendar.

No. 26902.

United States Court of Appeals
Fifth Circuit.

March 11, 1969.

Rehearing Denied June 18, 1969.

Daniel J. McGee, Mamou, La., Preston N. Aucoin, Ville Platte, La., for appellant.

Patrick A. Juneau, Jr., Lafayette, La., Isom J. Guillory, Jr., Aaron Frank McGee, Guillory, Guillory & Guillory, Eunice, La., for appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this Jones Act death case the decedent's mother, Mrs. Eva Fontenot, sought to intervene in the District Court claiming that she, not an alleged daughter, was the exclusive beneficiary. Mrs. Fontenot now seeks review of that Court's judgment denying intervention on the ground that the daughter, not the mother, was the sole claimant.[1] The contest here is limited to determining which of these is the statutory claimant.

Since status as beneficiary depends on whether the alleged daughter is a child of decedent, the precise questions presented are (1) whether the meaning of the term "children" in 45 U.S.C.A. § 51, which is incorporated into the Jones Act by 46 U.S.C.A. § 688,[2] is to be determined by state law (as the District Court held), and (2) if the answer to the first question is in the affirmative, whether the plaintiff here is a "child" of the decedent under Louisiana principles. We hold that state law is determinative and that plaintiff is a "child" of decedent under Louisiana law. Consequently, the dismissal of the intervention must be affirmed.

I.

Before passing on the substantive merits it is appropriate to discuss in some detail the procedure employed by this Court in disposing of this case. Acting under our recently promulgated Rule 18,[3] the Court has judicially determined that oral argument is not required and accordingly has placed this case on the Summary Calendar. As this procedure is being used more and more, we feel that the bench and bar are entitled to a fuller exposition of it than might be discernible from the empowering Rules (see note 3, *supra*).

The Summary Calendar procedure is part of a program ordained by the Fifth Circuit Judicial Council,[4] in an effort to meet the constantly increasing demands on the Court as dockets explode beyond even the increased capacity of expanding Judge power. This is by no means a problem of the Fifth Circuit alone. Across the nation Courts of Appeals share with the Fifth the need for exercising judicial inventiveness to increase productivity and expedite disposition without sacrificing the quality demanded both by statute and fundamental concepts of due process.[5]

---

1. The District Judge designated his dismissal as a final judgment under F.R.Civ. P. 54(b). Accordingly, the order is ripe for review by this Court. No judgment is made or intimated with respect to the liability merits of the suit.

2. The statute provides:
   " * * * and in case of the death of any seaman as a result of any such personal injury, the personal representative of such seaman may maintain an action for damages at law * * * and in any such action all statutes of the United States conferring or regulating the right of action and death in a case of railway employees shall be applicable."
   46 U.S.C.A. § 688

3. See Appendix setting forth Fifth Circuit Rules 17–20.

4. Composed of all Active Circuit Judges, 28 U.S.C.A. § 332.

5. We recently summarized the situation in Groendyke Transport, Inc. v. Davis, 5 Cir., 1969, 406 F.2d 458, 1158, 1161 n. 6.

"See, e.g., the annual remarks of the Chief Justice to the American Law Institute in Bros., Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1965, 351 F.2d 208, 209 n. 1, cert. denied, 1966, 383 U.S. 936, 86 S.Ct. 1065, 15 L.Ed.2d 852; Peters v. Rutledge, 5 Cir., 1968, 397 F. 2d 731, 738 n. 22; Jackson v. Choate, 5 Cir., 1968, 404 F.2d 910 [Misc. No. 1071, Nov. 29, 1968]; Jackson v. Dept. of Pub. Welfare of Fla., S.D.Fla., 1968, 296 F.Supp. 1341, 1342, n. 1. This problem is developed at length with detailed data concerning the Fifth Circuit in the Senate Report of Hearings on the Operation of Procedures for the Temporary Assignment of Federal Judges, 1968, before the Subcommittee on Improvements in Judicial Machinery, 90th Cong., 2d Sess., at 64–80 (1968); testimony and statement of the Chief Judge with supporting exhibits, Crisis in Courts of Appeals, at 80–84 (1968) ; and remarks of Senator Tydings, Chairman, Oct. 8, 1968, 114 Cong.Rec.S. 12237–39."

The project in essence is a presubmission consideration for preliminary classification of each case for calendaring purposes. Empowered by Fifth Circuit Rule 17, the Court has established four main classifications. The first covers cases so lacking in merit as to be frivolous and subject to dismissal or affirmance without more. The second comprises cases in which oral argument is not required and which then go on the Summary Calendar for disposition on briefs and record without oral argument.[6] This leaves those cases in which oral argument is deemed required or helpful, the third group covering those in which limited (15 min.) argument is thought adequate, and the fourth, those meriting up to the full time (30 min.) allowed by FRAP 34 or fixed by the presiding Judge of the panel hearing oral argument.

The important thing is that this screening is a judicial one performed by Judges, not the Clerk or other non-judicial staff. It is done through a series of standing panels of three Judges, made up of Active Fifth Circuit Judges only. Cases are not submitted to a screening panel until all briefs are in or the allowable FRAP time has expired. When cases are ripe for screening they are submitted to the screening panels at random, without reference to subject matter, state of origin, or any other criteria.

As an added safeguard against even the remote possibility of oral argument being denied by a single Judge, the procedure calls for unanimous panel action to put the case on the Summary Calendar. Carrying it a step further, if after placing it on the Summary Calendar, any member of the panel has doubts or unresolved differences with the proposed opinion, the case is automatically removed and reclassified for full or limited argument. In other words, the classification of the case and its disposition must be unanimous. This demands informed, individual action by each panel member which will always equal, if it does not exceed, that required for an orally argued case. It bears emphasis also that prior to the release of the Court's decision a written notice under Rule 18 (note 3, *supra*) is given to counsel or the parties that the case is placed on the Summary Calendar. Also, in every Summary Calendar case an opinion, per curiam or signed, is published and given the same distribution and handling as cases orally argued. Consequently, both for orally argued[7] and Summary Calendar cases advance notice is given.

The extent to which this procedure has been an effective administrative tool,

---

Both for the Fifth and the Courts of Appeals as a whole these figures are detailed in Peters v. Rutledge, 5 Cir., 1968, 397 F.2d 731, 738–739 n. 22.

6. By way of a non-exhaustive illustration this may encompass cases as in *Groendyke, supra*, also those in which from intervening decisions the outcome is certain, likewise, those that involve substantial questions in which oral argument will not be helpful, etc.

In another context it is significant that in seven of the recent en banc cases the full Court has determined to take each on briefs without oral argument.

7. For cases assigned for oral argument the printed calendar states

NOTICE TO COUNSEL

The Court directs Counsel's attention to the following:

The docket will be called each day and at that time counsel will indicate the time requested within the rules (see FRAP 34). Acting under its local rules Nos. 17, 18 and 19, the Court has classified cases in advance of calendaring. Those cases marked * shall be argued not to exceed 15 minutes per side. The argument time for those cases not so marked will be fixed by the presiding judge within the limits of the rule.

MONDAY, MARCH 24, 1969

* No. 26748. United States of America vs. Verstell Willis, Appellant.

* No. 26715. Willett Wilson, Appellant vs. City of Port Lavaca, Texas, et al.

No. 26863. Securities and Exchange Commission v. Affiliated Investment Corp., et al, Appellants.

No. 26747. James S. and Louise H. Holder vs. United States of America, Appellant.

and more important, how even-handed has been its use is revealed by the statistics covering the initial period of some 80 days [8] (Dec. 15, 1968–March 5, 1969). Evenhandedness is especially significant since our actual experience refutes the apprehension which may be held in some quarters that it would be the indigent and those without counsel [9] whose cases would be put on the Summary Calendar. The obverse was that litigants with counsel and elaborate expensive briefs would receive oral argument. But it has not worked that way at all. In the first place pro se habeas and § 2255 cases comprised but a small number (21) out of the total screened (313). Next, disposed of without oral argument as ordinarily in the past (note 9, *supra*), they account for less than 23% of the Summary Calendar classification in contrast to over 50% of civil cases running the gamut of diversity, private civil, Labor Board, civil rights, admiralty, etc.[10] And in the context of the total number of cases screened (313) the Summary Calendar—with only one of the 93 classed as frivolous—represents a substantial part.[11] Finally, the increase in productivity, especially in terms of time under submission, is reflected by the more than 46 printed, published opinions out of the 93 cases placed

| CASES FOR SCREENING | | | CLASSIFIED AS | | | |
|---|---|---|---|---|---|---|
| Submitted to Panels | Classified by Panels | Outstanding | Summary Calendar | Limited Argument | Full Argument | Total |
| 346 | 313 | 33 | 93 | 114 | 106 | 313 |

9. As a practical matter, under our former practice, pro se habeas and § 2255 cases were disposed of without oral argument except in the rare case of a released petitioner appearing on the calendar date.

10.

Breakdown of Summary
Calendar Cases
By Subject Matter

| Total | No. | % |
|---|---|---|
| HC §2255 w/o counsel | 21 | 22.6 |
| HC §2255 w/counsel | 4 | 4.3 |
| Criminal (direct appeal) | 21 | 22.6 |
| Civil | 47 | 50.5 |
| Total | 93 | 100.0 |

11.

| | % |
|---|---|
| Percentage of Summary Calendar Cases to total screened | 29.7 |
| Percentage of Summary Calendar Cases to total screened (excluding pro se cases) | 24.6 |

on the Summary Calendar[12] in this brief period.

## II.

This is one of those cases in which the facts present an unusual variation on a familiar melody. Edward Fontenot, the decedent, and Patricia LeBouef were married on October 13, 1959, but they only remained together for about one month. After they separated in November 1959, they never again lived together. At some time in late 1960 or early 1961, Patricia Fontenot began living with Allen Murphy. On December 29, 1961, while still married to Fontenot, Patricia gave birth to a daugther, Romona Gail. Not until May 15, 1962, did Patricia obtain a divorce from Edward Fontenot.

Subsequently, in November 1966, Edward Fontenot was killed in an explosion at sea. In July 1967, Patricia Murphy, as administratrix of Fontenot's estate, filed suit for wrongful death, alleging that Edward Fontenot was the father of her daughter Romona Gail. About one year later, Eva C. Fontenot, the surviving dependent mother of the decedent, sought to intervene in this proceeding or to be designated as the real party in interest on the ground that the decedent had left no widow or children and that she was the sole surviving and dependent parent and therefore the only beneficiary under the Jones Act.[13]

In the areas of wrongful death and federal insurance, there are many federal cases dealing with the rights of children deemed illegitimate under state law. The factual twist in the instant case is that although long separation of the mother from Fontenot at least allows inferences about the child's parentage, she is considered to be his legitimate child under state law[14] and now seeks to assert a federal right afforded to the de-

12. A list of twenty-three cases heretofore placed on the Summary Calendar may be found in Floyd v. Resor, 5 Cir., 1969, 409 F.2d 783 n. 2 [Feb. 24, 1969]. Since that time, the following cases have been added to the list: United States v. Ellington, 5 Cir., 1969, 406 F.2d 348 [January 23, 1969]; Burrell v. Kaiser Aluminum & Chem. Co., 5 Cir., 1969, 408 F.2d 339 [February 12, 1969]; Fleming v. United States, 5 Cir., 1969, 406 F.2d 1247 [February 10, 1969]; Kiel v. United States, 5 Cir., 1969, 406 F.2d 1323 [February 10, 1969]; Wirtz v. Leon's Auto Parts Co., 5 Cir., 1969, 406 F.2d 1250 [February 10, 1969]; Newberry v. Beto, 5 Cir., 1969, 406 F.2d 1325 [February 10, 1969]; Dillon v. Crowe, 5 Cir., 1969, 406 F.2d 1321 [February 10, 1969]; NLRB v. Stewart & Stevenson Serv., Inc., 5 Cir., 1969, —— F.2d —— [No. 25902, February 12, 1969]; Exchange Nat'l Bank v. Hibernia Nat'l Bank, 5 Cir., 1969, 407 F.2d 840 [February 13, 1969]; Carlisle v. M/S Sistina, 5 Cir., 1969, 407 F.2d 824 [February 19, 1969]; Pugh v. Southern Ry., 5 Cir., 1969, 407 F.2d 382 [February 19, 1969]; Ocean Drilling & Exploration Co. v. Russell, 5 Cir., 1969, 408 F.2d 319 [February 21, 1969]; Abraham v. Wainwright, 5 Cir., 1969, 407 F.2d 826 [February 24, 1969]; United States v. Rich, 5 Cir., 1969, 407 F.2d 934 [February 21, 1969]; Tittle v. United States, 5 Cir., 1969, 407 F.2d 843 [February 21, 1969]; Guss v. Jack Tar Management Co., 5 Cir., 1969, 407 F.2d 859 [February 25, 1969]; Acme Boat Rentals v. J. Ray McDermott & Co., 5 Cir., 1969, 407 F.2d 1324 [February 25, 1969]; United States v. Brock, 5 Cir., 1969, 408 F.2d 332 [February 28, 1969]; Wheeler v. Beto, 5 Cir., 1969, 407 F.2d 816 [March 4, 1969]; Sellers v. Small Business Administration, 5 Cir., 1969, 407 F.2d 402 [February 25, 1969]; Scrivener v. Atchison, T. & S. F. Ry., 5 Cir., 1969, 409 F.2d 1356, Heath v. Wainwright, 5 Cir., 1969, 408 F.2d 1020 [February 28, 1969]; Denmac Corp. v. NLRB, 5 Cir., 1969, 408 F.2d 497 [March 4, 1969].

13. The Jones Act, through the FELA, provides:

"Every common carrier by railroad * * * shall be liable in damages * * * in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee * * *."

45 U.S.C.A. § 51. Thus the statute prescribes a descending order of beneficiaries. See Chicago, Burlington & Quincy R.R. v. Wells-Dickey Trust Co., 1927, 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216, 59 A.L.R. 758.

14. See note 20 *infra* and related text.

cedent's "children" by the Jones Act.[15] If she is determined to be his child for purposes of the Jones Act, she will recover to the exclusion of the decedent's sole surviving parent.[16]

■ As stated above, the first question is whether state or federal law should be applied to determine the meaning of the term "children" in 45 U.S.C.A. § 51. In a leading case pertinent to this question, Seaboard Airline Ry. v. Kenney, 1916, 240 U.S. 489, 36 S.Ct. 458, 60 L.Ed. 762, the Supreme Court considered particularly the definition of the term "next of kin" as used in § 51. The Court there stated:

> "There can be now no question that the act of Congress in so far as it deals with the subjects to which it relates is paramount and exclusive. It is therefore not disputable that recovery under the act can be had alone in the mode and by and for the persons or class of persons in whose favor the law creates and bestows a right of action. * * * But this is irrelevant, since the controversy concerns only the meaning of the act, which it is conceded, when rightly interpreted, is entitled to exclusive operation.

> "Plainly the statute contains no definition of who are to constitute the next of kin to whom a right of recovery is granted. But, as speaking generally under our dual system of government, who are next of kin is determined by the legislation of the various states to whose authority that subject is normally committed, it would seem to be clear that the absence of a definition in the act of Congress plainly indicates the purpose of Congress to leave the determination of that question to the state law. But, it is urged, as next of kin was a term well known at common law, it is to be presumed that the words were used as having their common-law significance, and therefore as

excluding all persons not included in the term under the common law; meaning, of course, the law of England as it existed at the time of the separation from the mother country. Leaving aside the misapplication of the rule of construction relied upon, it is obvious that the contention amounts to saying that Congress, by the mere statement of a class, that is, next of kin, without defining whom the class embraces, must be assumed to have overthrown the local law of the states, and substituted another law for it; when conceding that there was power in Congress to do so, it is clear that no such extreme result could possibly be attributed to the act of Congress without express and unambiguous provisions rendering such conclusion necessary. The truth of this view will be made at once additionally apparent by considering the far-reaching consequence of the proposition, since, if it be well founded, it would apply equally to the other requirements of the statute,—to the provisions as to the surviving widow, the husband and children, and to parents, thus, for the purposes of the enforcement of the act, overthrowing the legislation of the states on subjects of the most intimate domestic character, and substituting for it the common law as stereotyped at the time of the separation. The argument that such result must have been intended, since it is to be assumed that Congress contemplated uniformity, that is, that the next of kin entitled to take under the statute should be uniformly applied in all the states, after all comes to saying that it must be assumed that Congress intended to create a uniformity on one subject by producing discord and want of uniformity as to many others."

240 U.S. at 493–494, 36 S.Ct. at 460, 60 L.Ed. at 765–766.[17]

15. This Court has discovered only one other case presenting this rather unusual situation. Interestingly, it is one of our own decisions. See Ellis v. Henderson, 5 Cir., 1953, 204 F.2d 173, cert. denied, Marine Welding, Scaling & Sales Co. v. El-

lis, 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381, which is discussed below.

16. See note 13 *supra*.

17. See also Poff v. Pennsylvania R.R., 1946, 327 U.S. 399, 66 S.Ct. 603, 90 L.

The term "next of kin" is not the only relationship described in § 51, however, for the statute sets out other classes of beneficiaries: "surviving widow or husband," "children", "parents". See note 13 *supra*. In the view of this Court, it would be incongruous to refer to state law in defining one of the statutory terms, but to ignore it in defining another of the parallel, comparable terms. Thus *Kenney*, standing alone, provides strong support for the proposition that state law should be used to determine the meaning of the term "children" in § 51.

The *Kenney* case is not a solitary sentinel, however, for there are many lower court cases involving the problem of defining "child" under federal law. Overwhelmingly, courts declare that in construing the terms "child" or "children" in a federal statute, a court should look to state law.[18]

In Ellis v. Henderson, 5 Cir., 1953, 204 F.2d 173, cert. denied, 346 U.S. 873, 74 S.Ct. 123, 98 L.Ed. 381, this Circuit had occasion to consider the meaning of the term "child" as used in § 9 of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 909. The facts in *Ellis* are strikingly similar to those of the instant case. The plaintiffs there were illegitimate children whose natural father co-habited with, but was not married to, their mother. The decedent was their mother's lawful husband, and the issue was whether the plaintiffs could be deemed "children" of the decedent for purposes of the Act.

This Court, while noting that "insofar as the definition in the federal statute is complete in itself it controls", recognized

that the definition there did not cover the factual situation presented. The Court then reasoned that the problem of determining the meaning of the word "child" in the Act was similar to that faced by the Supreme Court in defining "next of kin" in the *Kenney* case. Consequently, the Court turned to Louisiana law—in fact, the same provisions as those involved in the instant case—and held that each of the children was a "child" of the decedent, since the decedent legally had made himself their "father" because he had failed to disavow paternity of his wife's children within the time allowed by law.

Merely to round out the decisional picture we acknowledge that the Second Circuit case of Middleton v. Luckenbach S. S. Co., 2 Cir., 1934, 70 F.2d 326, cert. denied, 293 U.S. 577, 55 S.Ct. 89, 79 L.Ed. 674, perhaps suggests a contrary result. The *Middleton* Court found it necessary, however, to distinguish *Kenney* on the ground that in *Kenney* the accident had occurred and the suit had been brought in North Carolina, and the transaction had had a substantial contact with that particular state. In *Middleton*, not only did the accident take place upon the high seas, but the victims and their survivors were not even citizens of this country. Moreover, in *Middleton* the Court pointed out that the Act with which it was concerned (the Death on the High Seas Act), unlike the FELA involved in *Kenney*, did not provide for concurrent state and federal jurisdiction. In contrast, the instant case involves the Jones Act, which—like the FELA—provides for concurrent jurisdiction. In

---

Ed. 749, 162 A.L.R. 700, holding that the meaning of "next of kin" in 45 U.S. C.A. § 51 is determined by state law.

18. For cases adopting this view with regard to the Federal Employees' Group Life Insurance Act, see La Bove v. Metropolitan Life Ins. Co., 3 Cir., 1959, 264 F.2d 233; Grove v. Metropolitan Life Ins. Co., 4 Cir., 1959, 271 F.2d 918. But see Metropolitan Life Ins. Co. v. Thompson, 1966, 368 F.2d 791, cert. denied, Thompson v. Thompson, 388 U.S. 914, 87 S.Ct. 2127, 18 L.Ed.2d 1355.

In De Sylva v. Ballentine, 1956, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415, the Supreme Court held that the meaning of the term "children" in the Copyright Act, 17 U.S.C.A. § 24, would be determined by looking to state law.

See also Bell v. Tug "Shrike", 4 Cir., 1964, 332 F.2d 330, cert. denied, 379 U.S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49; Beebe v. Moormack Gulf Lines, Inc., 5 Cir., 1932, 59 F.2d 319, cert. denied, 287 U.S. 597, 53 S.Ct. 22, 77 L.Ed. 520.

See generally Annot., 94 A.L.R.2d 910, 912–14 (1964).

this respect, then, the case before us is more like *Kenney* than *Middleton*.[19] Whether *Middleton* is really at odds with our view we need not decide, for if it is we decline to follow it.

■ Since state law is determinative, the question now becomes the status of the minor child under Louisiana law. Under the Louisiana Civil Code, the husband of the mother is presumed to be the father of all children conceived by her during the marriage. La.Civ.Code Art. 184. The Louisiana Supreme Court has described this presumption as the "strongest presumption known in the law". Feazel v. Feazel, 1952, 222 La. 113, 62 So.2d 119. Therefore, Romona Gail is presumed to be the lawful child of Edward Fontenot in spite of all the asserted physical evidence to the contrary.

As the presumption of legitimacy is clearly applicable here, we come, then, to the question of determining its conclusiveness on the parties before the Court. The Civil Code provides generally that in cases in which the presumption is subject to attack, the presumed father, if he intends to dispute legitimacy, must institute an action to disavow paternity (*en desaveu*) within a prescribed period after the child is born or after he discovers its existence.[20] Likewise, if the husband dies without having disputed legitimacy, his heirs are given a short time to make objection to the status of the child.[21] In the instant case, however, neither Edward Fontenot nor his mother resorted to the procedure afforded by statute.

■■ Throughout a long line of decisions the Louisiana Courts have applied these statutory provisions stringently. It is now beyond dispute that if the husband fails to bring a statutory action to disavow, the right to challenge the legitimacy of the children born during marriage becomes extinct. *E. g.*, Evans v. Roberson, 1933, 176 La. 280, 145 So. 539. Likewise, a Louisiana Court of Appeal has stated, " * * * as against heirs of a deceased, where no action to disavow paternity was brought by the deceased during his lifetime nor by the heirs during the two months following the death, the presumption of paternity becomes conclusive." Jenkins v. Aetna Cas. & Sur. Co., La.App., 1935, 158 So. 217, 219 (holding that third persons, too, are bound by the presumption). Accordingly, since neither Edward Fontenot nor his mother (and heir), Mrs. Eva Fontenot, instituted the requisite statutory procedures, under state law Romona Gail is conclusively presumed to be the child of Edward Fontenot. As his child, she is the statutory beneficiary under the Jones Act and is entitled to whatever recovery might be had for his death.

Affirmed.

19. The Fourth Circuit, too, has distinguished the *Middleton* case in a similar manner. See Bell v. Tug "Shrike", 4 Cir., 1964, 332 F.2d 330, cert. denied, 379 U. S. 844, 85 S.Ct. 84, 13 L.Ed.2d 49.

    See also Huber v. Baltimore & O.R.R., 1965, D.Md., 241 F.Supp. 646, where the Court held that dependent illegitimate children should be considered beneficiaries under the FELA, unless this result conflicted with a clearly enunciated state policy.

20. Art. 191. Time limit for disavowal by husband

    Art. 191. In all the cases above enumerated, where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of the child, must do it within one month, if he be in the place where the child is born, or within two months after his return, if he be absent at that time, or within two months after the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making any objection to the legitimacy of such child.

21. Art. 192. Time limit for disavowal by heirs of husband

    Art. 192. If the husband die without having made such objection, but before the expiration of the time directed by law, two months shall be granted to his heirs to contest the legitimacy of the child, to be counted from the time when the said child has taken possession of the estate of the husband, or when the heirs shall have been disturbed by the child, in their possession thereof.