**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL–CIO, LOCAL 990, Respondent.**

No. 28680.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1970.

---

Charles M. Paschal, Jr., Director, N.L.R.B., 15th Region, New Orleans, La., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herman M. Levy, Michael S. Winer, Attys., N.L.R.B., for petitioner.

Robert J. Rabin, Jacob Sheinkman, New York City, Ronald K. Fisher, Chicago, Ill., for respondent.

Before JOHN R. BROWN, Chief Judge, and BELL and INGRAHAM, Circuit Judges.

PER CURIAM:

■ ENFORCED. See Local Rule 21.

JOHN R. BROWN, Chief Judge:

It may seem incongruous that a one-word disposition should have this rather extended opinion as a part of the Court's action. But the purpose of this opinion is not to discuss the merits, or more accurately the lack of merits, in the case under review.[1] Rather it is to advise

---

1. The instant case is a run-of-the-mill Board Order finding that the Union had

violated § 8(b) (1) (A) of the Act by threatening employees with loss of em-

litigants, parties and the Bar about the Fifth Circuit's most recent Rule 21.[2]

As was this Court's system for judicial screening of cases [3]—now rounding out a year and three quarters' experience which continues to demonstrate its fairness and workability— Rule 21 is another response of this Court to the ever-growing explosive increase in the amount of its judicial business.[4]

What is worse, the future both for the Fifth Circuit and for the Federal Courts of Appeals nationwide is portentous, as witness the surveys of the United States Courts of Appeals made by Will Shafroth, formerly Deputy Director of the Administrative Office of the United States Courts. These reflect that actual experience in the short space of four years proves that all projections err on the low side.[5] The increases are spectacular for the Fifth Circuit [6] and for that matter foreboding for the Courts of Appeals as a whole.[7]

ployment if they did not join the Union. It turns wholly on credibility choices which are amply supported.

2. Rule 21 provides: When the Court determines that any one or more of the following circumstances exists and is dispositive of a matter submitted to the Court for decision: (1) that a judgment of the District Court is based on findings of fact which are not clearly erroneous; (2) that the evidence in support of a jury verdict is not insufficient; (3) that the order of an administrative agency is supported by substantial evidence on the record as a whole; (4) that no error of law appears; and the Court also determines that an opinion would have no precedential value, the judgment or order may be affirmed or enforced without opinion.

In such case, the Court may in its discretion enter either of the following orders: "AFFIRMED. See Local Rule 21," or "ENFORCED. See Local Rule 21."

3. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I; Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, Part I, and especially the data discussed in each of these opinions, Part I particularly in notes 5 of Murphy and 4 through 10 of Huth.

See also Groendyke Transport, Inc., v. Davis, 5 Cir., 1969, 406 F.2d 1158, 1161, n. 6.

4. The almost exponential expansion is revealed by the increase year by year in the number of cases filed, disposed of and carried over to the succeeding year during the last decade in the Fifth Circuit:

| Year | No. Cases Filed | No. Cases Disposed Of | Carried Forward to Succeeding Year |
|------|------|------|------|
| 1960 | 584 | 554 | 278 |
| 1961 | 639 | 514 | 403 |
| 1962 | 717 | 598 | 522 |
| 1963 | 876 | 765 | 633 |
| 1964 | 1033 | 931 | 735 |
| 1965 | 1073 | 878 | 930 |
| 1966 | 1099 | 1028 | 1001 |
| 1967 | 1189 | 1171 | 1019 |
| 1968 | 1347 | 1290 | 1076 |
| 1969 | 1489 | 1496 | 1069 |
| 1970 | 1794 | 1682 | 1181 |

5. The first survey was in 1967, Survey of U. S. Courts of Appeals, 1967, 42 FRD 243 et seq. Within a year the projections through 1975 had to be revised and within just two more years, the 1970 Survey again revises them substantially upward.

6.
Projections of Case Filings
5th Circuit
1968–1975

| | 1967 Survey * | 1970 Re-Survey * |
|------|------|------|
| 1968 | 1,285 | 1,348 |
| 1969 | 1,374 | 1,648 |
| 1970 | 1,464 | 1,700 |
| 1971 | 1,554 | 1,852 |
| 1972 | 1,643 | 2,006 |
| 1973 | 1,733 | 2,159 |
| 1974 | 1,823 | 2,311 |
| 1975 | 1,913 | 2,464 |

* 42 FRD at 263
** Projections were based on the most recent 5-year period (1965–69), a basis our experience justifies.

7. See Note 7 on page 969.

7. The 1970 Shafroth Survey Projection nationwide by Circuit is:

**United States Courts of Appeals**

**Total Caseload Projections for 1970–1975**

**Based on Actual Caseload of Filings for Fiscal Years 1965–1969, by Circuit**

| Fiscal year | Total | District of Columbia | First | Second | Third | Fourth | Fifth | Sixth | Seventh | Eighth | Ninth | Tenth |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Caseload of Appeals Commenced 1960 to 1969 [1] | | | | | | | | | | | | |
| 1960 | 3,899 | 505 | 154 | 582 | 296 | 224 | 577 | 306 | 329 | 237 | 455 | 234 |
| 1961 | 4,204 | 527 | 146 | 674 | 334 | 250 | 630 | 340 | 328 | 246 | 443 | 286 |
| 1962 | 4,587 | 601 | 154 | 555 | 408 | 292 | 703 | 394 | 374 | 282 | 560 | 264 |
| 1963 | 5,039 | 718 | 133 | 667 | 354 | 352 | 852 | 374 | 381 | 254 | 687 | 267 |
| 1964 | 5,412 | 624 | 179 | 680 | 368 | 450 | 1,010 | 513 | 396 | 305 | 507 | 380 |
| 1965 | 6,221 | 568 | 193 | 778 | 444 | 568 | 1,037 | 638 | 469 | 302 | 809 | 415 |
| 1966 | 6,548 | 702 | 170 | 793 | 482 | 569 | 1,041 | 603 | 475 | 374 | 796 | 543 |
| 1967 | 7,069 | 689 | 181 | 828 | 609 | 727 | 1,132 | 657 | 483 | 393 | 881 | 489 |
| 1968 | 8,224 | 839 | 204 | 858 | 561 | 946 | 1,348 | 715 | 634 | 401 | 1,077 | 641 |
| 1969 | 9,334 | 954 | 204 | 1,112 | 612 | 1,036 | 1,648 | 772 | 655 | 394 | 1,396 | 551 |
| Projections of Caseloads, 1970 to 1975 [2] | | | | | | | | | | | | |
| 1970 | 9,850 | 1,023 | 207 | 854 | 666 | 1,163 | 1,700 | 791 | 702 | 436 | 1,428 | 639 |
| 1971 | 10,640 | 1,114 | 213 | 919 | 708 | 1,294 | 1,853 | 829 | 756 | 457 | 1,574 | 676 |
| 1972 | 11,430 | 1,025 | 218 | 983 | 749 | 1,426 | 2,006 | 867 | 809 | 478 | 1,719 | 713 |
| 1973 | 12,220 | 1,296 | 224 | 1,048 | 791 | 1,557 | 2,159 | 905 | 862 | 499 | 1,865 | 750 |
| 1974 | 13,011 | 1,387 | 230 | 1,112 | 832 | 1,688 | 2,311 | 943 | 915 | 520 | 2,010 | 787 |
| 1975 | 13,801 | 1,478 | 235 | 1,177 | 874 | 1,820 | 2,464 | 981 | 968 | 542 | 2,166 | 824 |

1 From 1962 to 1969 the number of cases commenced has been reduced by cases disposed of by consolidation.

2 The projected 1970–1975 filings represent a mathematical straight line trend based on the "method of least squares" using the data base of filings for fiscal years 1965–1969. Because of rounding of separate circuits, totals for all circuits may be slightly different.

[A 2628].

But even more foreboding, for the Fifth Circuit, we have had to continually revise these nationwide projections upward because of our own demonstrated experience.[8] Within but a year —tomorrow—we will have 2,000 cases and a couple of years more—day after tomorrow—we will have 2,500 cases.

We need not here canvass the causes for this local and nationwide increase. A core cause undoubtedly is the like increase in the nation's population from 150 million to 205 million in the short space of 20 years—a growth which this area more than shares. More directly related to Court operations, quite obviously it is due to the increase in Federal Court business generally. But of unusual significance is the fact that the percentage of appeals taken in both civil and criminal cases markedly exceeds the percentage of increase in trials in the District Courts.[9] For the Fifth Circuit, total District Court trials have increased 78% against an increase of 168% for appeals in the period 1961–1969, and, whereas criminal trials have increased 48%, criminal appeals have increased 210%.[10]

With this staggering prospect now upon us, we can see it is our duty to exercise imaginative, inventive resourcefulness in fashioning new methods and in adapting or modifying older ones, to enable us to at least stay abreast of this flood tide. This means that with safeguards which will assure the proper handling of cases, the Court and its members, up to the maximum physical

8. Against the 1970 survey forecast of 1700 filings for F.Y. 1970 (see note 6 supra), we actually had 1794 (See Note 4 supra).

Using Fifth Circuit actual experience the 1970 survey projections require further upward revision:

| F.Y. | 1970 Survey | Upward Revision Fifth Circuit |
|---|---|---|
| 1971 | 1,852 | 1,961 |
| 1972 | 2,006 | 2,124 |

| F.Y. | 1970 Survey | Upward Revision Fifth Circuit |
|---|---|---|
| 1973 | 2,159 | 2,286 |
| 1974 | 2,311 | 2,447 |
| 1975 | 2,464 | 2,609 |

9. See consolidated Tables S–6 with respect to each of the Courts of Appeals in the 1970 Shafroth Report. (See note 5, supra).

10. For the Fifth Circuit it is as follows:

### Table S-6. United States Court of Appeals Fifth Circuit

TRIALS IN THE DISTRICT COURTS AND CIVIL AND CRIMINAL APPEALS TO THE COURT OF APPEALS FISCAL YEARS 1961 through 1969

| Fiscal year | Number of Judgeships Circuit | District | Total trials | Total civil and criminal appeals filed | Civil trials | Civil appeals | Criminal trials | Criminal appeals |
|---|---|---|---|---|---|---|---|---|
| 1961 | 7 | 33 | 1,770 | 512 | 1,159 | 408 | 611 | 104 |
| 1962 | 9 | 45 | 1,975 | 529 | 1,328 | 422 | 647 | 107 |
| 1963 | 9 | 45 | 2,227 | 679 | 1,463 | 528 | 764 | 151 |
| 1964 | 9 | 45 | 2,154 | 818 | 1,418 | 687 | 736 | 131 |
| 1965 | 9 | 45 | 2,292 | 879 | 1,596 | 702 | 696 | 177 |
| 1966 | 9 | 45 | 2,478 | 873 | 1,669 | 664 | 809 | 209 |
| 1967 | 13 | 58 | 2,703 | 949 | 1,869 | 703 | 834 | 246 |
| 1968 | 13 | 58 | 2,960 | 1,159 | 2,034 | 820 | 926 | 339 |
| 1969 | 15 | 58 | 3,162 | 1,372 | 2,257 | 1,049 | 905 | 323 |
| Percent change 1969 over 1961 | 114.3 | 75.8 | 78.6 | 168.0 | 94.7 | 157.1 | 48.1 | 210.6 |

Note: Beginning with 1962 the number of appeals in each year under each category has been reduced by the number disposed of by consolidation.

[A 2632]

and mental capacity of each of the Judges, must increase output.[11]

We have made substantial headway[12] in this goal by the screening procedures adopted (see note 3, supra) and especially since after the experience of a year and a half, the number of non-argued Summary II cases runs approximately 40% of the total number of cases briefed for submission and disposition on the merits.[13] But within both the cases classed as Summary II and those classed III or IV and calendared for oral argument, our experience, bearing out that of appellate courts generally, is convincing that in a number of cases there is no real need for an opinion at all. Where in a given case that is the considered judicial judgment of three Judges comprising a panel, then it is perfectly obvious that the now limited and precious judicial resources can be husbanded by a procedure which eliminates that unnecessary opinion.

Experience again demonstrates that cases in which an opinion really serves no useful purpose falls into several well recognized groups. Rule 21 (see note 2, supra) undertakes to identify them broadly as (1) through (4). The factor (1) deals with the familiar situation in which the correctness of the Judge-tried case turns on fact findings. Of course, sometimes judicial judgment will persuade the panel that an articulate discussion of factual details is desirable if not necessary. On the other hand, from the standpoint of the function of an appellate court opinion, little is to be served by an elaborate discussion or for that matter a discussion at all on the underlying facts which the Court, after mature study, is convinced are not demonstrated to be clearly erroneous under F.R.Civ.P. 52(a). Closely akin and for the jury trial is factor (2) where the Court concludes the evidence warranted jury submission. After the masterly opinion written for the full Court by Judge Ainsworth in Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365 (en banc), there is seldom any need for discussion of the legal standard. And in many cases the law receives no benefit from any discussion of the evidence which the Court concludes is sufficient. These same considerations are carried over into the field of administrative law by factor (3) for cases in which the legal standard is well known and in which the facts are often of a kind which are non-repetitive and completely uninstructive with respect to the illumination of legal principles or as a guide for future conduct by parties or judicial action by administrative agencies or Courts. Factor (4) covers that broad group of cases in which no error of law appears.

As the Rule points out, its application depends upon the Court deter-

---

11. We deal always in the Fifth Circuit in large figures, both of input (see note 4, supra) and output.

Total Number of Printed Opinions

  1965 –  626
  1966 –  672
  1967 –  820
  1968 –  953
  1969 – 1128
  1970 – 1271

12. As shown in note 4, supra, although filings have increased so has yearly output, with output each year since 1967 exceeding input of the preceding year with a disproportionately smaller increase in the carry over to the succeeding year. In addition there has been a substantial reduction in the time from filing to disposition.

13. Experience may also prove an experiment unhelpful as it did our Rule 19, promulgated as a part of the screening procedure. (See note 3 supra, and the Appendix to *Murphy*, 409 F.2d 804, 812). The Court has rescinded Rule 19 which expressly permitted motions for summary reversals, affirmance, etc. as its operation proved actually to delay, not to expedite, the matter. Without the Rule the Court recognizes that it has the inherent power to take such action on its own or a party's motion where circumstances warrant. See, e. g., Groendyke Transport, Inc., v. Davis, 5 Cir., 1969, 406 F.2d 1158, 1161, n. 6.

mining judicially "that any one or more of the following circumstances [(1) through (4)] exists and is dispositive * * * ". But of decisive significance in each of these factors, singly or collectively, is the further judicial determination by the Court "that an opinion would have no precedential value".

It is here that the Court faces a heavy obligation. For as a part of the time-proved hierarchical system, this Court and each of its Judges must constantly bear in mind the distinctive role of an appellate court, particularly a United States Court of Appeals. Foremost, we are a court of review and in the Federal system a court of review of cases in which appeal is nearly always a matter of right, not a certiorari-type discretion. That means, of course, that we must determine in each case whether the outcome under review meets acceptable legal standards. But our role does not stop there even though to the parties it is the result we ordain which counts the most.

██ A most important function is the writing of opinions. Opinions are to serve a number of purposes at least two of which are highly significant. One is that an articulated discussion of the factors, legal, factual or both, which lead the Court to one rather than to another result, gives strength to the system, and reduces, if not eliminates, the easy temptation or tendency to ill-considered or even arbitrary action by those having the awesome power of almost final review. The second, of course, is that the very discursive statement of these articulated reasons is the thing out of which law—and particularly Judge-made law—grows. It is an essential part of the process of the creation of principles on which predictions can fairly be forecast as a basis for conduct, accountability, or the like. All Judges know that in some cases this latter factor may almost completely transcend the importance of the case which is the vehicle bringing the questions forward.

By Rule 21 the Court not only implicitly assumes the responsibility for evaluating this factor, but also is specifically commanded to make the conjunctive judicial determination that an opinion would have no precedential value. Having to make unanimously that explicit decisive determination, and implicitly, the further one that circumstances or factors, other than precedential value, do not make an opinion essential or appropriate, the Court, by the adoption of the Rule, affirms that it must be carefully and selectively employed.[13]

██ The Court recognizes that it must—the word is must—never apply the Rule to avoid making a difficult or troublesome decision or to conceal divisive or disturbing issues. This means that while Rule 21 should make a real contribution toward the goal of avoiding delays which can often amount to a denial of justice, it must be sparingly used.[14]

14. When Rule 21 is used for a case classed summary II the parties will get the Rule 18 Notice (see note 3. supra). When used in a class III or IV calendared case after oral argument the order is handled as would be a regular opinion, signed or per curiam.

15. We understand this is the experience of the District of Columbia Circuit Court of Appeals under its Rule 13(c).
(c) Order Form of Decision. In accordance with recommendations for improvement of judicial administration,[1] this court may, while according full consideration of the issues, dispense with opinions where the issues occasion no need therefor, and confine its action to such abbreviated disposition as it may deem appropriate, e. g., affirmance by order of a decision or judgment of a court or administrative agency; a judgment, of affirmance or reversal, containing a notation of precedents, or accompanied by a brief memorandum.
1. Report of the President's Commission on Crime in the District of Columbia (1966) p. 308; and see Canon 19—American Bar Association Canons of Judicial Ethics; Position adopted by the Judicial Conference of the United States—March 16, 1964.

The Court itself must be vigilant. We believe we are sensitive now to the factors which would make application of the Rule wrong or unwise or inappropriate. It is the Court's purpose to heed them and in our own survival assure survival of the system we cherish.