CARPENTERS DISTRICT COUNCIL OF
SOUTHERN COLORADO, and its
Local 362, Petitioners,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 76–1103.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 26, 1977.

Decided Aug. 19, 1977.

LEWIS, Chief Judge.

Petitioners, Carpenters District Council of Southern Colorado (Council) and its Local Union 362 (Local) (jointly referred to as the "unions") seek review of an order of the National Labor Relations Board (Board), reported at 222 N.L.R.B. No. 104, holding the unions' recognition picketing of the job site of their primary employer, a general contractor, and the fining of two union employees of a neutral subcontractor for working behind the picket had the secondary object of influencing the neutral employer and its employees to "cease doing business" with non-union employers in violation of sections 8(b)(1)(A), 8(b)(4)(i)–(ii)(B) of the National Labor Relations Act (Act), 29 U.S.C. §§ 158(b)(1)(A), 158(b)(4)(i)–(ii)(B). The Board cross applies for enforcement of its order.

I.

The underlying facts as found by the Administrative Law Judge (ALJ) are largely undisputed.[1] On March 21, 1973, Pace Construction Company (Pace), a general contractor not under contract with the unions, began construction of an eight-unit office building in Pueblo, Colorado. The initial layout work was completed by Pace by April 8, and there were no Pace tools, materials, property, or personnel on the job site again until May 4.[2] On April 27, without prior communication with Pace, the unions placed a picket on the job site.[3] The picket sign carried the legend: "Pace Construction Co. does not have an agreement with Carpenters Union." Picketing continued until May 16, when an accommodation

Clay R. Smith, Phoenix, Ariz. (John W. McKendree, Denver, Colo., and Jonathan Wilderman, Phoenix, Ariz., on the brief), for petitioners.

Mary K. Schuette, Washington, D. C. (Janet C. McCaa, Deputy Asst. Gen. Counsel, Washington, D. C., on the brief, of counsel: John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C.), for respondent.

Before LEWIS, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

1. The findings and decision of the Administrative Law Judge were accepted by the Board, one member dissenting.

2. With the exception of two or three ten to fifteen minute visits to the job site by Leonard Pace on May 1 and 2.

3. The Local contends there was no evidence it was involved in any way in the picketing and that the decision to picket was entirely the responsibility of the Council. The ALJ found, however, that the picketing was authorized by Bernard Robinson in his dual capacity as business manager of the Council and financial secretary of the Local and that the picketing was paid for with funds allocated by the Local's executive committee. The ALJ therefore concluded the picketing was a joint venture of the Council and the Local. As this finding is supported by substantial evidence we are required to accept it as conclusive on appeal. 29 U.S.C. § 160(e).

was reached between Pace and Bernard Robinson, business representative of the Council and financial secretary of the Local.

On May 1, while the picket was still present, Southern Colorado Prestress Co. (Prestress) arrived on the job site to erect the prefabricated concrete shell of the building pursuant to its subcontract with Pace. The Prestress crew had been informed by their supervisor the previous evening that a picket would be in place at the job site and that the decision to work or honor the picket was up to them. No attempt was made by Prestress to set up a "reserve gate" for the use of its crew at the job site. Prestress commenced work at 6:30 on the morning of May 1 and at approximately 8:00 the regular picket arrived. Later that morning Robinson and a companion from the unions arrived and took several photographs of the Prestress crew working behind the picket. The picket left at 4:30 and the Prestress crew left at 5:30. On May 2, Prestress commenced work at 6:00. About 6:30 Robinson arrived and commenced picketing until he was supplanted by the regular picket at 8:00. While Robinson was picketing he was approached by Prestress foreman Stanko, also a union member, who asked what was going on. Robinson replied he could not talk to Stanko while carrying a picket sign but would meet Stanko at the union hall at 4:30 if Stanko wanted to talk to him. There was no other communication between the unions and Prestress employees during the picketing. The regular picket left the job site at 4:30 and Prestress completed its work about 9:30 that evening.

On June 13 Robinson filed intra-union charges with the Council against Prestress employees Stanko and Turner, both members of the carpenters union, for working behind a picket in violation of the union constitution. By letters dated June 26 Stanko and Turner were formally advised

of these charges and told their cases would be tried July 28. On November 27 the Council found both Stanko and Turner "guilty as charged" and fined each of them $50.

## II.

In challenging the Board's holding that the picketing violated sections 8(b)(4)(i)–(ii)(B), the union insists there was no evidence to support the finding that the picketing had the secondary object of influencing Prestress or its employees to "cease doing business" with Pace or other non-union employers. The starting point in determining whether the objects of the picketing were "primary" or "secondary" within the meaning of section 8(b)(4) must be an evaluation of the criteria set forth in Sailor's Union of the Pacific (Moore Dry Dock), 92 N.L.R.B. 547, approved by this court in NLRB v. Carpenters Local 55, 10 Cir., 218 F.2d 226.[4] The ALJ found the unions' picketing activities superficially met the standards of Moore Dry Dock thereby raising the inference that the picketing was "primary."

Although this finding is not seriously contested on appeal, the parties agree the inference of primary activity raised by compliance with the Moore Dry Dock standards may be dispelled if the totality of the circumstances indicated the unions' conduct was not "addressed to the labor relations of [Pace] . . . vis-a-vis his own employees," National Woodwork Mfrs. Ass'n v. NLRB, 386 U.S. 612, 645, 87 S.Ct. 1250, 1268, 18 L.Ed.2d 357, but was "tactically calculated to satisfy [its] objectives elsewhere," id. at 644, 87 S.Ct. at 1268. This principle was aptly summarized by the Board in Northeastern Washington—Northern Idaho Bldg. & Constr. Trades Council, 152 N.L.R.B. 975, 980:

4. The criteria set forth in Moore Dry Dock are:

. . . (a) The picketing is strictly confined to times when the situs of the dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal busi- ness on the situs; (c) the picketing is limited to places reasonably close to the location of the situs; and (d) the picketing discloses clearly that the dispute is with the primary employer.

92 N.L.R.B. at 549.

While literal compliance with the standard of *Moore Dry Dock* may indicate the primary nature of common situs picketing, we have held that such an inference is not conclusive but may be negatived by other relevant evidence disclosing the Respondent's true objective to be to enmesh neutral employers and employees in its dispute with the primary employer.

In the case at bar the ALJ found:

[The unions] disclosed an objective of enmeshing the neutral Prestress on May 1 and 2 by the totality of their fining Stanko and Turner for working behind the picket line those days; their taking pictures May 1 of the picketer standing next to Prestress's crane and of the Prestress crew at work . . . ; and Bernard Robinson's picketing for over an hour early on May 2, until the regular picket arrived at the regular time. Perhaps further indicative of a secondary object was [the unions'] failure to ask that Pace enter into negotiations or sign a labor agreement before the start of picketing.

(Citations omitted.) In light of the totality of these circumstances the ALJ concluded the picketing on May 1 and 2 evidenced a secondary object and was therefore violative of sections 8(b)(4)(i)–(ii)(B).[5] These findings and conclusions were affirmed by the Board.

■ On appeal we must accept the Board's findings of fact if supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e). Since the factual circumstances enumerated by the ALJ as evidence of the picketing's secondary object, *supra*, are uncontested and are amply supported by the record as a whole we accept them as conclusive on appeal.

■ Although the unions do not dispute the accuracy of the ALJ's basic findings of fact, they seriously challenge his conclusions that these facts evidenced a secondary object as a misapplication of the law to the established facts. We are persuaded, however, that the task of ascertaining the object of the unions' activities or the intent with which they were conducted requires determinations that are essentially factual. In reviewing what is essentially a factual determination we are not free to "reweigh" the facts and substitute our own views of the facts for those found by the Board. *NLRB v. Pipefitters Local 638*, 429 U.S. 507, 530, 97 S.Ct. 891, 51 L.Ed.2d 1.[6] Moreover, "[t]he Board's reading and application of the statute involved in this case [29 U.S.C. § 158(b)(4)] . . . are long established, have remained undisturbed by Congress, and fall well within that category of situations in which courts should defer to

---

**5.** The unions assert that all of the factors enumerated by the ALJ other than the fines of Stanko and Turner were merely "window dressing" and that the Board therefore held the fines *per se* evidenced a secondary intent. Although the fines may well have been the most important factor in the Board's decision, our review of the record as a whole does not convince us the other factors enumerated are either unsupported by the evidence or irrelevant to a determination of the object of the picketing. The fact that any one of the factors enumerated by the ALJ, in and of itself, may not have been sufficient to evidence a secondary object does not mean these factors may not be considered as part of the *totality* of circumstances evidencing a secondary object. We therefore reject the unions' arguments on this point as without merit.

The unions further contend the fines were temporally too far removed from the picketing to indicate anything about the unions' object at the time the picketing was conducted and submit the fines cannot be viewed as influencing Prestress or its employees to "cease doing busi-

ness" with Pace since Prestress's work was long completed by the time the fines were levied. We have previously determined the unions' secondary object was evidenced by a number of factors other than fines, however, and note that the temporal separation of the fines and the picketing may affect the weight to be given this evidence but not its relevancy. The Board's determination that section 8(b)(4)(B) embraces prospective as well as existing business relationships and that the fines levied against Turner and Stanko could influence such future relationships is likewise well within the Board's area of expertise in interpreting specific provisions of the Act and as such is entitled to affirmance on appeal. See text accompanying note 7 *infra*.

**6.** We also note in this connection that it was not necessary for the Board to find that the *sole* object of the picketing on May 1 and 2 was secondary so long as one of the unions' objectives was to influence Prestress or its employees. *Id.* at 530 n.17, 97 S.Ct. at 904.

the agency's understanding of the statute which it administers." *Id.* at 528, 97 S.Ct. at 903. We therefore grant enforcement of the Board's order as it relates to the violations of sections 8(b)(4)(i)–(ii)(B).[7]

### III.

 The unions' challenge to the Board's finding they violated section 8(b)(1)(A) by fining Prestress employee Turner[8] is based on the special proviso of that section protecting "the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." 29 U.S.C. § 158(b)(1)(A). Although this proviso has been construed to exempt strictly intra-union disciplinary proceedings from charges of unfair labor practices under the Act, *see NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123, it does not confer *carte blanche* upon the unions with respect to internal proceedings where other considerations of overriding national labor policy are involved. In the present case the Board found the purpose of the fine levied against employee Turner was to discipline Turner for failing to observe a picket line we have determined to have been illegal—a purpose contrary to established national labor policy. Relying on the expertise of the Board, as we must, it follows that we cannot conclude the Board erred in finding the unions' legitimate internal interests in maintaining discipline among its members were outweighed by the detrimental effect of this procedure on national labor policy. *See Scofield v. NLRB,* 394 U.S. 423, 429, 89 S.Ct. 1154, 22 L.Ed.2d 385; *NLRB v. Retail Clerks, Local 1179,* 9 Cir., 526 F.2d 142, 146–47; *Local 1104, Commun. Workers v. NLRB,* 2 Cir., 520 F.2d 411, 415. We therefore grant enforcement of the Board's order as it relates to the violation of section 8(b)(1)(A).

### IV.

 The unions also urge us to extend the related work doctrine enunciated in *Local 761, Electrical Workers v. NLRB (General Electric Co.),* 366 U.S. 667, 81 S.Ct. 1285, 6 L.Ed.2d 592, to common situs picketing in the construction industry. Similar attempts to extend common situs picketing have been rejected by the Supreme Court, *NLRB v. Denver Bldg. & Constr. Trades Council,* 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284, by the Board's decision in this case, 222 N.L.R.B. No. 104, and by presidential veto, *see* Presidential Documents: Gerald Ford, Vol. 12, No. 1, pp. 16–17. We likewise decline to extend this doctrine under the facts of this case.

Enforcement granted.

7. As an extension of their argument the Board's finding of a secondary object was premised solely on the fines of Stanko and Turner, note 5 *supra*, the unions assert the Board has now concluded any violation of section 8(b)(4)(i)(B) is also a violation of section 8(b)(4)(ii)(B). The essence of this contention is that the fines at most evidenced the secondary object of influencing Stanko and Turner as employees of Prestress to put pressure on their employer and that there was no evidence of a secondary object of influencing Prestress directly as an employer. This argument is also without merit since we have previously determined the Board's findings were correctly based on the totality of the circumstances which included union activities directed at all Prestress employees on the job site, not just known union employees Stanko and Turner. The Board could, therefore, reasonably have inferred that the picketing evidenced a secondary object of influencing Prestress directly as employer, and that the fines, as an adjunct of the picketing, also violated section 8(b)(4)(ii)(B). Here again the Board's interpretation of specific provisions of the Act is entitled to considerable deference in light of the Board's " 'special function of applying the general provisions of the Act to the complexities of industrial life' . . . and its special competence in this field . . . ." *NLRB v. Weingarten, Inc.,* 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (citations omitted).

8. The ALJ found Prestress foreman Stanko had the power to "hire and fire" and therefore must be classified as a "supervisor" rather than an "employee" for purposes of section 8(b)(1)(A). This finding is not contested on appeal.

# UNITED STATES COURT OF APPEALS

## Fifth Circuit

---

## DECISIONS WITHOUT PUBLISHED OPINIONS

The following cases have been decided without formal opinion prepared for publication in the permanent law reports:

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| * Ash v. Estelle | 77–1347 | 9/20/77 | AFFIRMED *** | N.D.Tex. |
| * Barron-Leggett Electric, Inc. v. Philip N. Atkinson, Inc. | 76–4187 | 9/23/77 | AFFIRMED *** | S.D.Ala. |
| * † Booker Drilling Co. v. Rebel Well Service, Inc. | 76–1308 | 9/23/77 | AFFIRMED | E.D.La. |
| * † Couch v. Exxon Corp. | 76–1308 | 9/23/77 | AFFIRMED | E.D.La. |
| * † Duckworth v. Moore | 77–1012 | 9/23/77 | AFFIRMED | S.D.Ala. |
| * Elmer v. City of Portland, Oregon | 77–1961 | 9/20/77 | AFFIRMED | W.D.Tex. |
| * Emerson v. Wainwright | 77–1682 | 9/20/77 | AFFIRMED *** | S.D.Fla. |
| Evans v. Wainwright | 77–2908 | 9/23/77 | VACATED AND REMAND-ED *** | M.D.Fla. |
| Hepperle v. Johnston | 75–4081, 75–4082, 76–2210 | 9/27/77 | DENIED IN PART, DISMISSED IN PART *** | N.D.Tex. |
| Hepperle v. Southern Methodist University | 75–4080 | 9/27/77 | DENIED IN PART, DISMISSED IN PART *** | N.D.Tex. |
| * Hill v. Estelle | 76–3444 | 9/23/77 | AFFIRMED | W.D.Tex. |
| * Hillsboro Le Baron Condominium Apartments, Inc. v. Fairview Land Corp. | 76–3524 | 9/20/77 | VACATED AND REMAND-ED *** | S.D.Fla. |
| Love v. American Mutual Liability Ins. Co. | 76–1419 | 9/19/77 | AFFIRMED *** | S.D.Ala., 433 F.Supp. 747 |
| * Nolen v. Estelle | 77–1508 | 9/27/77 | AFFIRMED | N.D.Tex. |
| * Partida v. Estelle | 77–1617 | 9/20/77 | AFFIRMED *** | N.D.Tex. |
| * † Randolph v. Califano | 77–1822 | 9/20/77 | AFFIRMED | M.D.La. |
| * Schott v. U. S. | 77–2044 | 9/23/77 | AFFIRMED | E.D.La. |

* Summary Calendar case;  Rule 18, 5 Cir.;  see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

*** Opinion contains citation(s) or special notations.

† Local Rule 21 case;  see NLRB v. Amalgamated Clothing Workers of America, 5 Cir., 1970, 430 F.2d 966.

## DECISIONS WITHOUT PUBLISHED OPINIONS—Continued

| Title | Docket Number | Date of Decision | Disposition | Appeal from and Citation (if reported) |
|---|---|---|---|---|
| Simmons v. American Mutual Liability Ins. Co. ........ | 76–1420 | 9/19/77 | AFFIRMED *** | S.D.Ala., 433 F.Supp. 747 |
| * † U. S. v. Collins .......... | 77–5095 | 9/20/77 | AFFIRMED | N.D.Miss. |
| * U. S. v. Eggli .......... | 77–1704 | 9/23/77 | AFFIRMED *** | N.D.Ga. |
| * U. S. v. Hulsey .......... | 77–5196 | 9/23/77 | AFFIRMED *** | M.D.La. |
| * U. S. v. Martinez ........ | 77–5238 | 9/20/77 | AFFIRMED *** | S.D.Tex. |
| * † U. S. v. Orquiz .......... | 77–5096 | 9/20/77 | AFFIRMED | W.D.Tex. |
| * † U. S. v. Smith .......... | 77–5233 | 9/27/77 | AFFIRMED | E.D.La. |
| * U. S. v. Vega ........... | 77–5069 | 9/27/77 | AFFIRMED *** | S.D.Fla. |
| * † U. S. v. Velasquez ....... | 77–5186 | 9/27/77 | AFFIRMED | N.D.Tex. |
| * U. S. v. Weeks .......... | 77–5205 | 9/20/77 | AFFIRMED *** | D.Canal Zone |
| * United States Steel Corp. v. Duke ............... | 77–1250 | 9/27/77 | AFFIRMED *** | S.D.Tex. |
| * † Verdin v. La-Tex Gulf Drilling Corp. ........... | 77–1140 | 9/27/77 | AFFIRMED | E.D.La. |
| Vines v. Bank of Lexington, Lexington, Alabama ..... | 77–2029 | 9/20/77 | AFFIRMED | N.D.Ala., 430 F.Supp. 465 |
| * Walker v. Doughty ....... | 77–1879 | 9/23/77 | AFFIRMED *** | W.D.Tex. |
| * Whiting v. Wainwright .... | 77–1634 | 9/20/77 | AFFIRMED | M.D.Fla. |
| * Wilburn v. Estelle ........ | 76–4419 | 9/20/77 | REMANDED *** | N.D.Tex. |

* Summary Calendar case; Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

*** Opinion contains citation(s) or special notations.

† Local Rule 21 case; see NLRB v. Amalgamated Clothing Workers of America, 5 Cir., 1970, 430 F.2d 966.

# UNITED STATES COURT OF APPEALS

## Fifth Circuit

---

## DENIALS OF REHEARING EN BANC

(Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12)

Group 1—Denials where no member of the panel nor Judge in regular active service on the Court requested that the Court be polled on rehearing en banc.

Group 2—Denials after a poll requested by a member of the panel or a Circuit Judge in regular active service.

Group 3—Denials on the Court's own motion after a poll requested by a member of the panel or a Circuit Judge in regular active service.

| Title | Docket Number | Date of Denial | Citation of Panel Decision |
|---|---|---|---|
| **GROUP 1** | | | |
| Assaf v. University of Texas System | 75–3493 | 9/19/77 | S.D.Tex., 557 F.2d 822 |
| Bell v. Wainwright | 76–3664 76–3418 | 9/19/77 | M.D.Fla., 556 F.2d 781 |
| Cooper Stevedoring of Louisiana, Inc. v. Washington | 76–2849 | 9/21/77 | Ben.Rev.Bd. La., 556 F.2d 268 |
| Garrett v. Estelle | 77–1351 | 9/21/77 | N.D.Tex., 556 F.2d 1274 |
| Greene v. Hogan | 77–1646 | 9/22/77 | N.D.Ga., 558 F.2d 604 |
| McMonigle v. Delta Air Lines, Inc. | 75–3498 | 9/26/77 | N.D.Ga., 556 F.2d 1261 |
| N. L. R. B. v. Centeno Super Markets, Inc. | 76–1577 | 9/26/77 | N.L.R.B. Tex., 555 F.2d 442 |
| Save The Bay, Inc. v. Costle | 75–1633 | 9/21/77 | E.P.A. Miss., 556 F.2d 1282 |
| State Department of Public Welfare of State of Texas v. Califano | 75–1953 | 9/23/77 | W.D.Tex., 556 F.2d 326 |
| Woodard v. Wainwright | 76–3664 | 9/19/77 | S.D.Fla., 556 F.2d 781 |